UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

RAYNALDO RAMOS                                                                                    PLAINTIFF

V.                                                                     CIVIL ACTION NO. 3:23-CV-235-DPJ-ASH

HARTFORD ACCIDENT AND INDEMNITY                                                     DEFENDANTS
COMPANY, ET AL.

ORDER

Plaintiff Raynaldo Ramos seeks a protective order prohibiting Defendants from deposing his attorneys. Mot. [113]. As explained below, Ramos's motion is granted in part but otherwise denied.

I.     Facts and Procedural History

Ramos suffered serious physical injuries in an on-the-job accident with an uninsured motorist in February 2021. Defendants Hartford Accident and Indemnity Company and Twin City Fire Insurance Company provided uninsured motorists' (UIM) coverage to Ramos's employer. Ramos alleges Defendants delayed payment on his UIM claim without justification. He brings bad-faith claims against them under Louisiana law.

In July 2024, Defendants moved for summary judgment. In support of his response to Defendants' motion, Ramos filed the Affidavit of Eva Brindisi Pearlman, an attorney who says she represents him "in connection with his claims arising from [the] motor vehicle collision." Pearlman Aff. [66] ¶ 3. That affidavit detailed and attached communications she had with Defendants beginning in March 2021 regarding Ramos's claim.

After the Court denied Defendants' motion, Defendants informed Ramos of their intent to depose Pearlman and Edward E. Roberts, III, an attorney who represents Ramos in connection with ongoing workers' compensation claims against Hartford arising out of the same accident.

Defendants also requested to depose Julie Payne Johnson (Ramos's counsel of record in this action) and to take the Rule 30(b)(6) deposition of her law firm, Dudley DeBosier Injury Lawyers. Ramos moved for a protective order, and the Court ordered expedited briefing, which is now complete.

II.     Analysis

Federal Rule of Civil Procedure 26(c)(1) governs protective orders and provides:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including [an order] forbidding the disclosure or discovery . . . .

"The movant bears the burden of showing that a protective order is necessary, 'which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.'" *EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 698 (5th Cir. 2017) (quoting *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir. 1998)).

Special considerations apply when a party seeks to depose opposing counsel. The Federal Rules of Civil Procedure do not explicitly address (or prohibit) this. *See* Fed. R. Civ. P. 30(a) ("[A] party may . . . depose any person . . . ."). But the practice is disfavored because it "'disrupts the adversarial system[,] . . . lowers the standards of the profession, . . . adds to the already burdensome time and costs of litigation[, and] . . . detracts from the quality of client representation.'" *Nguyen v. Excel Corp.*, 197 F.3d 200, 209 n.26 (5th Cir. 1999) (quoting *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986)). Thus, courts should allow opposing-counsel depositions only in limited circumstances. *Id.*; *cf. United States v. Hinson*, 55 F.3d 632, 1995 WL 313939, at *1 (5th Cir. 1995) (unpublished table decision) ("An attorney should not call the opposing attorney as a witness unless his testimony is both necessary and unobtainable

from other sources."). Given these concerns, the Fifth Circuit has suggested that seeking the deposition of opposing counsel may be sufficient without more to issue a protective order. *Nguyen*, 197 F.3d at 209 ("[O]ne would suspect that a request to depose opposing counsel generally would provide a district court with good cause to issue a protective order."); *see also Theriot v. Parish of Jefferson*, 185 F.3d 477, 491 (5th Cir. 1999) ("Generally, federal courts have disfavored the practice of taking the deposition of a party's attorney; instead, the practice should be employed only in limited circumstances.").

When deciding whether to allow a deposition of opposing counsel, most district courts apply a three-prong test articulated by the Eighth Circuit in *Shelton*: (1) whether other means exist to obtain the information; (2) if the information sought is relevant and non-privileged; and (3) if the information is crucial to the preparation of the case. *Issaquena & Warren Cntys. Land Co., LLC v. Warren Cnty., Miss. Bd. of Sup'rs*, No. 5:07-CV-106-DCB-JMR, 2011 WL 6092450, at *4 (S.D. Miss. Dec. 7, 2011) (citing *Nguyen*, 197 F.3d 208; *Shelton*, 805 F.2d 1323); *accord Starr Indem. & Liab. Co. v. River & Roads Directional Drilling, LLC*, No. 3:23-CV-215-CWR-LGI, 2025 WL 51385, at *5 (S.D. Miss. Jan. 8, 2025). "If a party can satisfy all three factors, a deposition of the opposing counsel may be appropriate." *Issaquena*, 2011 WL 6092450, at *4. The Fifth Circuit has not expressly adopted the *Shelton* test. But "it has indicated that the same three factors inform a district court's discretion in determining whether to authorize the deposition of opposing counsel." *Murphy v. Adelphia Recovery Tr.*, No. 3-09-MC-105-B, 2009 WL 4755368, at *2 (N.D. Tex. Nov. 3, 2009) (citing *Nguyen*, 197 F.3d at 209).

As a preliminary matter, Defendants fail to address Plaintiff's argument that a protective order should issue against deposing Johnson, who is counsel of record, and her law firm. The Court grants this aspect of Plaintiff's motion as unopposed. *See* L.U. Civ. R. 7(b)(3)(E) ("If a

party fails to respond to any motion, other than a dispositive motion, within the time allotted, the court may grant the motion as unopposed.").

As to Pearlman and Roberts, Defendants raise a threshold issue: whether *Shelton* applies to the depositions of attorneys who are not counsel of record in this case. Plaintiff gives this argument little attention and cites *Huggins v. Aon Corp.*, No. 1:05-CV-157-D-A, 2006 WL 8444958, at * 1 (N.D. Miss. July 24, 2006), for the proposition that "the [*Shelton*] test applies to requests to depose attorneys who currently represent a party, even if the attorney has not enrolled in the case, entered an appearance, or signed a pleading." Reply [125] at 2. Plaintiff's characterization of *Huggins* touches on some of the facts of that case, but it omits the analysis. *See Huggins*, 2006 WL 8444958, at *2 (reasoning that in-house counsel "has participated in this litigation and other similar cases" despite not appearing as counsel of record and was not "merely an average employee").

Other district courts in the Fifth Circuit have considered circumstances similar to *Huggins*—the deposition of an attorney who is not counsel of record—but with a clearer analytical framework. Many have held that

> the critical factor in determining whether the *Shelton* test applies is not the status of the lawyer as "trial counsel," but the extent of the lawyer's involvement in the pending litigation. [Those courts have concluded] that, if the lawyer has knowledge of relevant facts related to the subject matter of the litigation, and is merely advising the client with respect to the lawsuit, *Shelton* does not apply, but that, if the lawyer is actively involved in trial preparation, she cannot be deposed unless the *Shelton* criteria are met.

*McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*, No. 3:14-CV-2498-B, 2016 WL 3033544, at *5 (N.D. Tex. May 26, 2016) (quoting *Murphy*, 2009 WL 4755368, at *3) (cleaned

4

up).[1] In other words, when the deponent is merely a party's attorney (or former attorney) rather than counsel of record, *Shelton*'s application depends on that attorney's actual relationship to the litigation. *Accord Huggins*, 2006 WL 8444958, at *2. [2]

---

[1] *Murphy* based its analysis on a later decision from the Eighth Circuit clarifying the intended scope of *Shelton*. *Murphy*, 2009 WL 4755368, at *2 (discussing *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726 (8th Cir. 2002)). The Eighth Circuit's *Pamida* decision, while not binding, is consistent with the approach taken by *Murphy* and others to determine whether *Shelton* even applies:

> The *Shelton* test was intend[ed] to protect against the ills of deposing opposing counsel in a pending case which could potentially lead to the disclosure of the attorney's litigation strategy. . . . But *Shelton* was not intended to provide heightened protection to attorneys who represented a client in a completed case and then also happened to represent that same client in a pending case where the information known only by the attorneys regarding the prior concluded case was crucial. In such circumstances, the protection *Shelton* provides to opposing counsel only applies because opposing counsel is counsel in the instant case and not because opposing counsel had represented the client in the concluded case. Therefore, the *Shelton* test applies only to the instant case, not to the concluded case.

*Pamida*, 281 F.3d at 730; *see also In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 71 (2d Cir. 2003) (construing *Pamida* as "limit[ing] the *Shelton* rule's reach").

[2] This Court agrees with *Theriot* and *Nguyen* that depositions of opposing counsel are disfavored. But *Shelton*'s approach shifts the burden that would ordinarily rest on the party resisting discovery to the party seeking it. *See Carr v. State Farm Mut. Auto. Ins. Co.*, 312 F.R.D. 459 (N.D. Tex. 2015) ("The United States Court of Appeals for the Fifth Circuit . . . has long held that, under Rule 26(c)(1), 'the burden is upon [the party seeking a protective order] to show the necessity of its issuance . . . .'" (quoting *In re Terra Int'l*, 134 F.3d at 306) (additional internal quotation marks omitted)). That makes sense in the context of obvious opposing counsel, such as counsel of record. There is no apparent need, however, to apply it mechanically outside that context. Indeed, that is the context that gave rise to *Shelton*. *See Pamida*, 281 F.3d at 730 (explaining that the *Shelton* "test was intend[ed] to protect against the ills of deposing opposing counsel in a pending case which could potentially lead to the disclosure of the attorney's litigation strategy" and noting that "this abuse of the discovery process had become an ever increasing practice"). While the Court is not certain that *Murphy*'s inquiry into when to apply *Shelton* is the best (or only) approach, it does agree that substantially more is required than merely saying an attorney is co-counsel.

The Court concludes that Plaintiff has not met his burden of establishing *Shelton* applies as to either Roberts or Pearlman. Starting with Roberts, he has not entered an appearance (*pro hac vice* or otherwise) as counsel of record in this case. As to his role, his affidavit explains that Ramos hired his law firm in March 2021 "to represent him in connection with his workers' compensation claims against Hartford arising from a motor vehicle collision." Roberts Aff. [116] ¶ 3. He further says he "continue[s] to represent Ra[mos] with regard to his ongoing workers' compensation claim." *Id.* ¶ 4. But he never suggests he "is actively involved in trial preparation" in *this* case. *McKinney*, 2016 WL 3033544, at *5; *see also Murphy*, 2009 WL 4755368, at *3 (applying *Shelton* to attorney who had not entered an appearance but who had demonstrated she "has been a part of the trial team" since early in the case, and that she "has participated in strategy discussions, read and edited pleadings, met with witnesses, and assisted in the collection and review of documents"). Plaintiff has not shown *Shelton* applies to Roberts's deposition testimony.

As for Pearlman—who, like Roberts, has not appeared as counsel of record—she explains in her affidavit that Ramos hired her in February 2021 "to represent him in connection with his claims against the Defendants arising from [the subject] motor vehicle collision." Pearlman Aff. [114-1] ¶ 3. And she makes the conclusory statements that she is "currently serving as co-counsel with the attorneys from Dudley DeBosier who have appeared on Plaintiff's behalf in the above-captioned matter" and that "the scope of [her] representation includes Mr. Ramos'[s] claims against [Defendants] in this lawsuit." *Id.* ¶¶ 5, 7. But she does not explain how she remains presently "actively involved in trial preparation." *McKinney*, 2016 WL 3033544, at *5 (quoting *Murphy*, 2009 WL 4755368, at *3). In addition to being conclusory, her statement that she is "serving as co-counsel" is also ambiguous. Importantly, she fails to demonstrate that

6

her involvement with the trial team (if there is any) rises to the level of triggering the concerns addressed by the *Shelton* test. On the record before the Court, it is entirely possible that Pearlman "is merely advising her client with respect to the lawsuit," in which case "*Shelton* does not apply." *Id.* (quoting *Murphy*, 2009 WL 4755368, at *3). Simply put, Plaintiff has not shown *Shelton* applies to Pearlman's deposition testimony either.

So the question becomes whether Ramos has established "good cause" to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Ramos makes no attempt to satisfy Rule 26(c)(1)'s "good cause" requirement other than to rely on the Fifth Circuit's observation that "one would suspect that a request to depose opposing counsel generally would provide a district court with good cause to issue a protective order." *Nguyen*, 197 F.3d at 209. But because the Fifth Circuit has never expressly adopted *Shelton* and the Court finds that neither Roberts nor Pearlman are "opposing counsel" subject to the *Shelton* test, that reasoning does not apply.[3] Ramos has not met his burden of showing that a protective order is necessary as to the depositions of Roberts or Pearlman. His motion for protective order is denied as to them.

That said, the scope of Roberts's and Pearlman's depositions will be limited by the attorney-client privilege and work-product doctrine. The Court notes that Defendants say that Pearlman

---

[3] Even if *Shelton* applied, Ramos's motion would present a close call because Defendants seek non-privileged factual information about pre-suit activities undertaken by Pearlman and Roberts that is highly relevant to the bad-faith claim and penalty at issue in this case. Defendants attempted to obtain the information from Ramos, but due to his medical condition, he either lacked knowledge or gave testimony of questionable reliability. It is possible that the attorneys' testimony will be cumulative of the written correspondence or of the testimony of Defendants' own witnesses. But that is not clear on the current record. And the Court has no reason to think that diligent (and well-founded) objections to questions seeking privileged information or work product will not protect it from disclosure.

> is the most likely person able to speak to . . . glaring issues Plaintiff asserts amount to bad faith on Defendants' part, such as, among other things: why she indicated in her January 24, 2022, demand letter that she could not provide the cost—or, at minimum, an estimate—for . . . Plaintiff's future medical treatment (which was not provided until 2024 during litigation) and complete past medical records/billing through the date of the letter; why the August 8, 2022, report for Plaintiff's independent medical exam was never submitted to Hartford pre-suit; why there were months long gaps between communications from Pearlman's office to Hartford; why multiple notices from Hartford notifying Pearlman that the claim remained open pending receipt of medical records went ignored for months at a ti[m]e; and why the $5 million check (of Hartford's total $6 million tendered) for tender of policy limits has not been cashed to date.

Defs. Mem. [124] at 13–14. As to Roberts, Defendants argue that

> [t]he subject and extent of those communications (including communication gaps, approval/denials of Plaintiff's treatment, recommendations on a Medicare Set-Aside as relayed to the worker's compensation and UM adjusters) as it relates to Plaintiff's bad faith allegations against Hartford for its alleged failure to timely tender payment are also highly relevant and discoverable.

*Id.* at 14.

As to why the communications *did* or *did not* include certain information, such questions would involve protected attorney work product or attorney-client privileged communications that Defendants *may not* inquire into. Defendants shall use caution to avoid unnecessary squabbles over obviously privileged matters. The Court will make itself available to the best of its ability to assist in working through any issues that arise during the depositions.

III.   Conclusion

The Court has considered all arguments. Those not addressed would not have changed the outcome. For the foregoing reasons, Ramos's motion for protective order [113] is granted in part; Defendants may not depose Julie Payne Johnson or the law firm of Dudley DeBosier Injury Lawyers. The motion is otherwise denied. Ramos's request for his fees and costs incurred in

filing the motion are denied. Because the Court did not consider Defendants' unauthorized surreply in ruling on Ramos's motion, Ramos's motion to strike [128] is terminated as moot.

**SO ORDERED AND ADJUDGED** this the 12th day of February, 2025.

s/ *Andrew S. Harris*
UNITED STATES MAGISTRATE JUDGE
