UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

RAYNALDO RAMOS                                                                                          PLAINTIFF

V.                                                                                  CIVIL ACTION NO. 3:23-CV-235-DPJ-ASH

HARTFORD ACCIDENT AND INDEMNITY                                                      DEFENDANTS
COMPANY, ET AL.

ORDER

This case is before the Court on Plaintiff Raynaldo Ramos's Motion to Compel, which also seeks leave to exceed the number of depositions provided for in the Federal Rules of Civil Procedure and the Case-Management Order [15]. Mot. [140]. As explained below, Ramos's motion is granted in part but otherwise denied.

I.    Facts and Procedural History

Ramos suffered serious physical injuries in an on-the-job accident with an uninsured motorist in February 2021. Defendants Hartford Accident and Indemnity Company and Twin City Fire Insurance Company provided uninsured motorists' (UIM) coverage to Ramos's employer. Ramos alleges Defendants delayed payment on his UIM claim without justification, and he brings bad-faith claims against them under Louisiana law.

Discovery is set to close on March 10, 2025. Ramos filed the instant motion on February 12, 2025. The Court ordered expedited briefing, which is now concluded.

II.   Standards

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). When a party believes discovery responses are deficient, "[o]n notice to other parties and all affected persons, a party may move for an order compelling . . . discovery." Fed. R. Civ. P.

37(a)(1); *see Crosswhite v. Lexington Ins. Co.*, 321 F. App'x 365, 368 (5th Cir. 2009) ("A party may move to compel production of materials that are within the scope of discovery and have been requested but not received."). "The moving party bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence." *Walker v. Hunt*, No. 1:19-CV-246-LG-RPM, 2021 WL 12307483, at *2 (S.D. Miss. Jan. 4, 2021) (quoting *Abraham v. Alpha Chi Omega*, 271 F.R.D. 556, 559 (N.D. Tex. 2010)) (cleaned up). If the moving party meets that burden, "the burden then shifts to the party resisting discovery to specifically show how each discovery request is not relevant or how each question is overly broad, burdensome[,] or oppressive." *Mills v. UPS Store, Inc.*, No. 3:19-CV-364-CWR-BWR, 2025 WL 525117, at *2 (S.D. Miss. Feb. 18, 2025).

III.   Analysis

    A.   Additional Fact Witness Depositions

The case-management order here limited the number of depositions "to the parties, experts, and no more than 10 fact witness depositions per party without additional approval of the Court." CMO [15] at 2; *see* Fed. R. Civ. P. 30(a)(2)(A)(i) (requiring a party to obtain leave of court to take more than 10 depositions); Fed. R. Civ. P. 26(b)(2)(A) ("[T]he court may alter the limits in this rules on the number of depositions . . . ."). Ramos has reached the 10-person limit on fact-witness depositions and seeks permission to depose four more witnesses: Julio Urrutia, Eamonn Wisneski, Philip Smith, and John Bello, Jr.

Defendants initially balk that Ramos did not raise the possibility of deposing Urrutia, Smith, or Bello in a discovery conference with the Court as required by the CMO. CMO [15] § 6.F.4. ("[B]efore a party may serve any discovery motion, counsel must first confer in good faith as required by [Rule] 37(a)(1). If the attorney conference does not resolve the dispute,

counsel must contact the chambers of the magistrate judge to request a telephonic conference to discuss the issue as contemplated by [Rule] 16(b)(3)(B)(v)."). True enough, the only extra witness raised in the February 5, 2025 telephonic discovery conference with the Court was Wisneski. Ramos explains that he "determined that additional depositions were necessary" after that discovery conference. Pl. Reply [151] at 4. Given that the issue of whether Ramos should be able to depose more than 10 fact witnesses was raised and discussed, even if the breadth of the request were unclear at the time, the Court will excuse Ramos's non-compliance with section 6.F.4. of the CMO in this instance only.[1]

Ramos's filings cite no authority in support of his request for additional depositions. Indeed, he never even mentions Federal Rule of Civil Procedure 26 or 30. On the other hand, Defendants rely almost exclusively on the three-prong test set forth in *Shelton v. American Motor Corp.*, 805 F.2d 1323 (8th Cir. 1986), because the four witnesses identified by Ramos are lawyers. But Defendants do not suggest that any of the four are "actively involved in trial preparation." *McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*, No. 3:14-CV-2498-B, 2016 WL 3033544, at *5 (N.D. Tex. May 26, 2016) (quoting *Murphy v. Adelphia Recovery Tr.*,

---

[1] Defendants are correct that the Court directed Ramos's counsel "to draft a stipulation regarding Wisneski to avoid the need to depose him." Defs. Mem. [147] at 1–2. Defendants say Ramos's failure to do so should result in the request being denied. Given the fast-approaching discovery deadline, the Court prefers to address the merits of Ramos's request, which will include consideration of whether a stipulation could obviate the need to depose Wisneski.

3

No. 3:09-MC-105-B, 2009 WL 4755368, at *3 (N.D. Tex. Nov. 3, 2009)).[2] For the reasons the Court articulated in its Order [136], Defendants have not shown *Shelton* applies.

Without any meaningful help from the parties on the legal framework, the Court begins with Rule 30(a)(2)(A)(i), which provides: "A party must obtain leave of court, and the court must grant leave to the extent consistent with Rule 26(b)(1) and (2) if the parties have not stipulated to the deposition and the deposition would result in more than 10 depositions being taken under this rule by [that party.]" So if the additional depositions are consistent with the scope of discovery set forth in Rule 26(b)(1) and (2), Rule 30 says the Court must allow them.

Rule 26(b)(1) permits discovery that is "relevant to any party's claim or defense and proportional to the needs of the case." "At the discovery stage, relevancy is broadly construed, and information is considered relevant if it 'encompass[es] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Stevens v. Flagstar Bank, Nat'l Ass'n*, No. 1:24-CV-94-HSO-MTP, 2025 WL 374942, at *2 (S.D. Miss. Feb. 3, 2025) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

> Proportionality is determined by "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

---

[2] Defendants' evidence that they are even lawyers is lacking. Defendants fail to submit any declarations or testimony to support this claim. The only evidence offered is screenshots purportedly of LinkedIn social media profiles, but the screenshots lack dates and URLs. *See Thompson v. Bank of Am. Nat'l Ass'n*, 783 F.3d 1022, 1027 (5th Cir. 2015) ("In the case of an exhibit purported to represent an electronic source, such as a website or chat logs, testimony by a witness with direct knowledge of the source, stating that the exhibit fairly and fully reproduces it, may be enough to authenticate.").

*TIGI Linea Corp v. Pro. Prods. Grp., LLC*, No. 4:19-CV-840, 2021 WL 2662236, at *4 (E.D. Tex. June 29, 2021) (quoting Fed. R. Civ. P. 26(b)(1)). Finally, Rule 26(b)(2) requires the Court to "limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:"

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C).[3] Ramos, as the party seeking leave to conduct additional depositions, bears the burden of demonstrating that the requirements of Rules 30 and 26 are satisfied. *United States v. Umbrella Fin. Servs., LLC*, No. 3:22-CV-2759, 2023 WL 4109697, at *1 (N.D. Tex. June 21, 2023). With these guardrails in place, the Court will address the parties' arguments about each potential additional witness in turn.

---

[3] Neither party cited it, but the Court's research uncovered a line of cases beginning with *Barrow v. Greenville Independent School District*, in which district courts require a party seeking to take more than 10 depositions "show the necessity of all the depositions he took in reaching the prescribed limit." 202 F.R.D. 480, 483 (N.D. Tex. 2001); *see Mullenix v. Univ. of Tex. at Austin*, No. 1:19-CV-1203, 2021 WL 3474008, at *1 (W.D. Tex. Aug. 6, 2021) (following *Barrow*); *TIGI Linea Corp*, 2021 WL 2662236, at *5 (same). Because neither side suggested the Court should apply *Barrow*, it declines to do so. But in his reply, Ramos showed the necessity of the 10 fact-witness depositions already taken. He explained that he deposed two eyewitnesses and a law-enforcement agent who responded to the accident scene because Defendants' answer denied that the uninsured motorist involved in the accident "was uninsured, at fault, solely responsible for the crash, and intoxicated when the crash occurred." Pl. Reply [151] at 2. Perhaps those depositions could have been avoided had Defendants conceded those facts. Defendants appear to have admitted some of those facts, such as the driver's uninsured status and that he caused the accident, by tendering policy limits to Ramos. And Ramos persuasively argues that he needed to depose so many of Defendants' employees because their "internal staffing decisions caused numerous employees to be involved with the adjustment of Plaintiff's claim." *Id.* at 3. Thus, had the Court applied *Barrow*, it would have found Ramos met his burden.

5

1. Urrutia

Ramos explains that Urrutia "is a representative of Hartford who had multiple communications with Eva Pearlman during the pre-suit handling of [Ramos's] claim" and is "mentioned in the claims notes produced by Defendants." Pl. Mem. [141] at 2. Ramos wants to ask Urrutia "about representations he made to Ms. Pearlman during their communications, as well as requests that Ms. Pearlman made of Mr. Urrutia." *Id.* at 2–3.

Looking to the Rule 26(b)(2)(C) factors, Urrutia's deposition could very well be duplicative of Pearlman's insofar as the primary subject of his potential testimony is his communications with Pearlman. Similarly, Ramos has access to Pearlman—one of his attorneys—and can obtain information from her about communications she had with Urrutia. As to whether Ramos "has had ample opportunity to obtain the information by discovery in the action," he has known about Urrutia since before suit was filed, as Pearlman's communications with Urrutia occurred pre-suit. Fed. R. Civ. P. 26(b)(2)(C)(ii). Finally, considering the proportionality factors—particularly the parties' relative access to relevant information, the importance of the discovery in resolving the dispute, and whether the burden or expense of the discovery outweighs its benefit—given that Pearlman is already being deposed, the Court is not convinced that the deposition of Urrutia as the eleventh fact witness is proportional to the needs of the case. The Court thus concludes that Ramos has failed to meet his burden of showing that leave to depose Urrutia is "consistent with Rule 26(b)(1) and (2)." Fed. R. Civ. P. 30(a)(2).

2. Wisneski

"Wisneski was the Hartford representative handling the workers' compensation subrogation." Pl. Mem. [141] at 3. He "sent a letter to Eva Pearlman asserting a lien against Plaintiff's UM benefits." *Id.* But another Hartford witness, Ryan McKain, "testified that Hartford

6

was prohibited by the language of its own insurance policy from asserting a lien against Plaintiff's UM benefits." *Id.* So Ramos wants "to depose Mr. Wisneski about the letter he sent to Eva Pearlman asserting a lien." *Id.* In particular, Ramos seems to want to require Wisneski to admit that his "letter contain[ed] a material misrepresentation of fact" in violation of Louisiana law. *Id.*

Defendants disagree with Ramos's construction of Wisneski's letter, stating that Wisneski's letter should be read to reference "possible subrogation by Hartford, in its capacity as the worker's compensation carrier, against **Carey Hickman** (the drunk driver who caused the accident and injury to Plaintiff)." Defs. Mem. [147] at 5. And they concede—consistent with McKain's testimony—that "[t]here is no claim for subrogation by Hartford against Plaintiff's recovery from the uninsured and/or underinsured motorist policies." *Id.*

At this point, any testimony by Wisneski on *whether* the workers' compensation carrier could assert a lien against Ramos's UIM benefits would be cumulative and duplicative—McKain testified about it, Defendants have conceded the point in their brief, and Ramos has yet to depose Cheryl Lacy, "another Hartford worker's compensation subrogation specialist." Defs. Mem. [147] at 5–6. But the only person who could definitively explain what he meant in his less than clear letters is Wisneski himself. *See* Letters [147-2]. As to that question alone, the deposition would not be cumulative or duplicative.

But Ramos may be able to obtain the information from another source. Indeed, the Court suggested in the February 5, 2025 discovery conference that Ramos could draft a stipulation for Wisneski that would obviate the need to depose him, and Ramos apparently failed to do so. That option remains available: Ramos could present Defendants with two alternative stipulations that explain what Wisneski meant in his letters and have the question finally answered. Ramos

7

certainly could have served written discovery about the meaning of the letter or asked Defendants' 30(b)(6) witness about it. Ramos has been in possession of the initial letter since August 2022, so he "has had ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C)(ii).

Finally, turning to the relevance and proportionality, Ramos says that the "central issue before the Court is whether Defendants violated [section] 22:1973 [of the Louisiana statutes] when they handled Mr. Ramos's claim," and if "Wisneski's letter contain[ed] a material misrepresentation of fact," that would be a violation of section 22:1973. Pl. Mem. [141] at 3. True enough, Ramos's complaint alleges Defendants breached section 22:1973. But the crux of the alleged breach is that Defendants "failed to make payment to Plaintiff within thirty days after receipt of . . . satisfactory written proofs" of loss. Compl. [1-1] ¶ 38. Ramos never alleges the misrepresentation of a material fact as the basis for his bad-faith claim. In view of all this, the Court cannot say that convening Wisneski's deposition to get him to explain what he meant by his letter is "consistent with Rule 26(b)(1) and (2)." Fed. R. Civ. P. 30(a)(2). Ramos may not exceed the 10-deposition limit to depose Wisneski.

   3.  Smith and Bello

The Court groups Smith and Bello together because Ramos does. Ramos says he "has a good faith basis to believe that [Smith and Bello] participated in the evaluation and adjustment of [his] claim before suit was filed." Pl. Mem. [141] at 3. In particular, Ramos believes that "Smith and Bello were instructing McKain and [Brett] Bielinski about the standards for adjusting Plaintiff's UM claim." *Id.* at 4.

McKain and Bielinski have themselves been deposed, so Smith's and Bello's testimony would arguably be duplicative of testimony already in the record. To the extent not privileged,

8

Ramos could have asked McKain and Bielinski about instructions or advice they received from Smith and Bello, meaning Ramos has had the opportunity "to obtain the information by discovery in the action" already. Fed. R. Civ. P. 26(b)(2)(C)(ii). And information about the claims-adjustment process could and should have been obtained through Defendants' 30(b)(6) deposition. As to relevance and proportionality, at the end of the day, this case is about whether Hartford should have paid Ramos's claim earlier than it did. Ramos has not met his burden to show that getting into the weeds of what Smith or Bello advised claims adjusters as to the applicable standards of care is relevant or proportional to the needs of the case. Ramos may not exceed the 10-deposition limit to depose Smith or Bello.

      B.      Unredacted Witness Preparation Documents

Next, Ramos asks the Court to compel production of documents defense witnesses McKain and Bielinski reviewed before their depositions. Specifically, he notes that

> both testified that defense counsel provided them with documents to review prior to their depositions to refresh their memories. In their discovery responses, Defendants have only produced a heavily redacted version of the documents that McKain and Bielinski reviewed. It is Plaintiff's understanding that McKain and Bielinski reviewed an unredacted version of these documents.

Pl. Mem. [141] at 4. It is these supposed unredacted versions Ramos asks the Court to require Defendants to produce.

Defendants' response makes clear that the witnesses were *not* shown unredacted versions of documents: "any documents that were provided to those two witnesses were the same documents produced to Plaintiff in discovery in the same format in which they were produced." Defs. Mem. [147] at 9.

> Ordinarily, the representation of a party's attorney that no additional documents exist is sufficient to defeat a motion to compel absent credible evidence that the representation is inaccurate. Consequently, if plaintiffs . . . do not provide any evidence

9

> demonstrating that responsive documents do, in fact, exist and are being unlawfully withheld, their motion to compel must fail.

*Thompson v. Intermodal Cartage Co., LLC*, No. 2:24-CV-34-KS-MTP, 2025 WL 209162, at *2 (S.D. Miss. Jan. 15, 2025) (quoting *Logan v. Madison Par. Det. Ctr.*, No. 3:12-CV-2221, 2013 WL 5781313, at *2 (W.D. La. Oct. 25, 2013)).

Ramos apparently refuses to take defense counsel at his word, asking in reply "that Defendants be ordered to produce a list of documents to Plaintiff, identifying the documents [Defendants provided to McKain and Bielinski] by Bates number (or other identifying information if the documents have not been previously disclosed)." Pl. Reply [151] at 6. Notably, Ramos does not "quote verbatim each . . . request for production" or interrogatory to which such a list would be responsive. L.U. Civ. R. 37(b). Defendants cite a Third Circuit opinion and a couple district court decisions for the proposition that requiring counsel to list the documents deemed relevant for review from the greater document production would improperly invade protected attorney work product. *See* Defs. Mem. [147] at 12–13 (citing *Sporck v. Peil*, 759 F.2d 312 (3d Cir. 1985); *Hanover Ins. Co. v. Plaquemines Par. Gov't*, 304 F.R.D. 494 (E.D. La. 2015); *In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*, 314 F.R.D. 397 (E.D. La. 2016)). Ramos fails to distinguish this authority or explain why the list is not attorney work product or, if it is, why Ramos is entitled to its discovery under Federal Rule of Civil Procedure 26(b)(3). Regardless, the Court takes defense counsel at his word and finds Ramos has not shown Defendants withheld anything they should have disclosed. This portion of the motion is therefore denied.

C.   Unredacted Workers' Compensation Claim Notes

Finally, Ramos asks the Court to compel Defendants to produce an unredacted version of the workers' compensation claims notes. He cites two redactions in particular that are included in

Defendants' privilege log. Pl. Mem. [141] at 6–7 (explaining that "Hartford produced a redacted version of the workers' compensation notes" and that "[i]n Hartford's privilege log, Hartford asserts a privilege twice."). In response, Defendants say they "have now provided those [two] unredacted notes" and assert that "this issue is moot." Defs. Mem. [147] at 13. But apparently there are additional redactions in the claims notes that are not tied to entries on the privilege log, and Ramos's motion requested "an unredacted copy of the workers' compensation claims notes." Pl. Mem. [141] at 8; *see also* Mot. [140] at 1 ("Plaintiff moves to compel production of an unredacted copy of the workers' compensation claims notes because Defendants have failed to demonstrate that any part of the workers' compensation claim file is privileged.").

Defendants never address additional redactions, instead saying that if Ramos seeks to lift the redaction as to anything besides the two entries reflected on the privilege log, they "would ask for leave of the Court to respond to that upon specific identification of such documents." Defs. Mem. [147] at 13. But the time for additional time to respond is behind us. Defendants justified no additional redactions in the workers' compensation claim notes. It is unclear from the briefing, but to the extent Defendants have redacted claim notes but failed to document the redactions on a log, the Local Rules provide that this "may be viewed as a waiver of the privilege or protection." L.U. Civ. R. 26(e). Ramos's motion to compel is granted as to this request. Defendants must produce a fully unredacted version of the workers' compensation claim notes on or before the close of business on February 28, 2025.

D.  Failure to Attach a Good Faith Certificate

While the Court has excused Ramos's failure to raise the depositions of Urrutia, Smith, and Bello in a discovery conference as required by Section 6.F.4. of the Case Management Order, this is not the only procedural defect. The Court reminds the parties that "[a] Good Faith

Certificate [Official Form No. 4] must be filed with all discovery motions." L.U. Civ. R. 37(a). Attaching a completed Official Form No. 4 Good Faith Certificate is not optional, and the obligation is not satisfied by conducting a meet and confer between counsel or a discovery conference with the Court. It "is a mandatory prerequisite." *Mills*, 2025 WL 525117, at *6. "This prerequisite is not an empty formality." *Ross v. Citifinancial, Inc.*, 203 F.R.D. 239, 240 (S.D. Miss. 2001). The parties are directed to comply with this rule concerning any pending or future discovery motions. Future non-compliance may result in the denial without prejudice of a party's discovery motion. L.U. Civ. R. 37(c).

III.    Conclusion

The Court has considered all arguments. Those not directly addressed would not have changed the outcome. For the foregoing reasons, Ramos's Motion to Compel [140] is granted in part: Defendants must produce a fully unredacted version of the workers' compensation claim notes by the close of business on February 28, 2025. The motion is otherwise denied.

**SO ORDERED AND ADJUDGED** this the 26th day of February, 2025.

s/ *Andrew S. Harris*
UNITED STATES MAGISTRATE JUDGE