UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

RAYNALDO RAMOS                                                              PLAINTIFF

V.                                                    CIVIL ACTION NO. 3:23-CV-235-DPJ-ASH

HARTFORD ACCIDENT AND INDEMNITY                                        DEFENDANTS
COMPANY, ET AL.

ORDER

This case is before the Court on Plaintiff Raynaldo Ramos's Motion to Compel. Mot.

[149]. As explained below, Ramos's motion is granted in part but otherwise denied.

I.      Facts and Procedural History

Ramos suffered serious physical injuries in an on-the-job accident with an uninsured

motorist in February 2021. Defendants Hartford Accident and Indemnity Company and Twin

City Fire Insurance Company provided uninsured motorists' (UIM) coverage to Ramos's

employer. Ramos alleges Defendants delayed payment on his UIM claim without justification,

and he brings bad-faith claims against them under Louisiana law.

Discovery is set to close on March 10, 2025. Ramos filed the instant motion on February

19, 2025. The Court ordered expedited briefing, which is now concluded. Defendants also

provided unredacted versions of the documents at issue in the motion to the Court for *in camera*

review in connection with their response.

II.     Standards

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any

party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1).

When a party believes discovery responses are deficient, "[o]n notice to other parties and all

affected persons, a party may move for an order compelling . . . discovery." *Id.* R. 37(a)(1); *see*

*Crosswhite v. Lexington Ins. Co.*, 321 F. App'x 365, 368 (5th Cir. 2009) ("A party may move to compel production of materials that are within the scope of discovery and have been requested but not received."). "The moving party bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence." *Walker v. Hunt*, No. 1:19-CV-246-LG-RPM, 2021 WL 12307483, at *2 (S.D. Miss. Jan. 4, 2021) (quoting *Abraham v. Alpha Chi Omega*, 271 F.R.D. 556, 559 (N.D. Tex. 2010)) (cleaned up). If the moving party meets that burden, "the burden then shifts to the party resisting discovery to specifically show how each discovery request is not relevant or how each question is overly broad, burdensome[,] or oppressive." *Mills v. UPS Store, Inc.*, No. 3:19-CV-364-CWR-BWR, 2025 WL 525117, at *2 (S.D. Miss. Feb. 18, 2025).

III.    Analysis

A.    Local Rule 37(a) Good-Faith Certificate[1]

The Court begins this Order where it ended its previous one: Ramos's failure to attach a Good-Faith Certificate to his motion as required by Local Rule 37(a).[2] In his rebuttal, Ramos acknowledges the failure and explains that "as soon as counsel read the Court's order, counsel emailed a proposed . . . Good Faith Certificate to defense counsel for signature" but "[d]efense

---

[1] Defendants assert that Ramos's motion did not include "a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action" as required by Federal Rule of Civil Procedure 37(a)(1). But Ramos's motion does include a Certificate of Compliance with Rule 37(a)(1) that explains that counsel has "had multiple telephone calls and emails with defense counsel regarding this dispute," and "has in good faith conferred . . . with Defendants in an effort to obtain . . . relief without court action." Mot. [149] at 4. Ramos complied with his obligations under Federal Rule 37.

[2] This is the fourth discovery motion: Defendants filed one [109], and Ramos filed the other three [113, 140, 149]. None of the four motions attached a Good-Faith Certificate as required by Local Rule 37(a).

counsel declined to sign the certificate." Pl. Rebuttal [156] at 1. Although Local Rule 37(c) calls

for denial without prejudice when a party fails to attach a Good-Faith Certificate, because

Ramos's motion is also largely due to be denied on the merits, because both sides have violated

Local Rule 37(a) in previous motion practice, and given the fast-approaching discovery deadline,

the Court will address the substance of Ramos's motion for the sake of completeness. The Court

will not be lenient with future non-compliance by the parties' counsel.

B.    Unredacted Large Loss Notices

Plaintiff explains that "Hartford's Large Loss Notices ('LLNs') are business records

maintained by Hartford that memorialize Hartford's decisions regarding the value of a claim,

including the documentation received by Hartford and the reason for Hartford's decision

regarding the value of the claim." Pl. Mem. [150] at 1. Hartford has produced "a partially

redacted copy of [a] June 2024 LLN, and a heavily redacted copy of [an] April 2023 [workers'

compensation] LLN." *Id.* Plaintiff wants the Court to compel Hartford to produce unredacted

copies of those two LLNs.

Defendants first contend that "[t]he Court did not conduct a conference concerning

updated redactions to the June 2024 [LLN] and April 2023 workers compensation [LLN] and did

not authorize a motion to compel on that topic." Defs. Mem. [153] at 3. But on February 13,

2025, Ramos's attorney emailed the undersigned's chambers regarding issues he wanted to

pursue at a telephonic discovery conference. Among those issues were Ramos's request that

Defendants remove redactions from certain LLNs. And the Court discussed the issue with the

parties on the February 14, 2025 call. Apparently after that, but before Ramos filed his motion on

February 19, Defendants removed some redactions, meaning the discovery conference worked at

least in part. As to the remaining redactions Ramos wants lifted, the Court gave Ramos

authorization during the February 14 call to file a motion by February 19. Ramos satisfied his

obligations under Section 6.F.4. of the CMO. *See* CMO [15] (requiring parties to attempt to

informally work out discovery disputes before setting a telephonic discovery conference with the

Court "to discuss the issue" and explaining that "[o]nly if the telephonic conference with the

judge is unsuccessful in resolving the issue may a party file a discovery motion").

1.      April 2023 Workers' Compensation LLN

Defendants' privilege log states that the redactions were made because the LLN was

prepared in anticipation of litigation and contains confidential settlement information. Ramos

says that "Hartford's corporate representative testified that the entity responsible for adjusting

the subject UM claim is wholly separate and distinct from the entity responsible for adjusting

Mr. Ramos's workers' compensation claim." Pl. Mem. [150] at 2. And he argues that

"Defendants do not have standing to assert the work product privilege on behalf of the workers'

compensation carrier, which according to Hartford is a separate entity" and that the workers'

compensation carrier waived any privilege by providing an unredacted copy of the LLN to

Defendants *Id.* at 3, 5.

In response, Defendants change tack. They first argue that because Ramos's workers'

compensation claim "is currently in settlement negotiations"—negotiations they suggest involve

Ramos's trial counsel in this case—"production of an unredacted version of the April 2023 LLN

would unfairly prejudice Hartford in those settlement negotiations." Defs. Mem. [153] at 4. Next,

they argue that Ramos "is not entitled to [further] information, communications, evidence, etc.,

pertaining to the worker[s'] compensation claim . . . because that claim is not part of Mr.

Ramos's UM bad faith suit." *Id.* In rebuttal, Ramos says that "none of the attorneys enrolled on

behalf of Plaintiff in this lawsuit represent Plaintiff with regard to his workers' compensation claim." Pl. Rebuttal [156] at 8.

Defendants brief no justification for a privilege claim for the redactions to the April 2023 workers' compensation LLN; thus they fail to satisfy their burden of establishing a privilege applies. *See EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 695 (5th Cir. 2017) (explaining that "the party asserting the [attorney-client] privilege bears the burden of proof"). And they cite no authority supporting their suggestion that the redactions are proper because of the procedural posture of the workers' compensation claim. So the real question is whether the information Defendants redacted is relevant and proportional to the needs of the case.

"At the discovery stage, relevancy is broadly construed, and information is considered relevant if it 'encompass[es] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Stevens v. Flagstar Bank, Nat'l Ass'n*, No. 1:24-CV-94-HSO-MTP, 2025 WL 374942, at *2 (S.D. Miss. Feb. 3, 2025) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

> Proportionality is determined by "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

*TIGI Linea Corp v. Pro. Prods. Grp., LLC*, No. 4:19-CV-840, 2021 WL 2662236, at *4 (E.D. Tex. June 29, 2021) (quoting Fed. R. Civ. P. 26(b)(1)).

The Court concludes Ramos has met his burden as to the redacted portions of the April 2023 workers' compensation LLN. The document's relevance is shown by the fact that Defendants produced it in response to Ramos's interrogatory asking Defendants to identify documents they reviewed related to the uninsured motorist's liability and insured status, Ramos's

damages, and "the decision to deny Plaintiff's uninsured/underinsured insurance claim." Pl.
Mem. [150] at 4. And lifting the redactions is proportional to the needs of the case. Indeed, the
only possible burden Defendants identify would be to the workers' compensation carrier—a non-
party to this lawsuit that already turned over an unredacted version of the document to
Defendants. This portion of Ramos's motion is granted. The Court directs Defendants to
produce, on or before March 5, 2025, an unredacted version of the document Bates labeled
DEFENDANTS 007558–59.

        2.      June 2024 LLN

     Defendants' privilege log for the remaining redactions to the June LLN "states that [the
document] was authored by handling claims adjuster Michelle Holiday-Crandall and sent to her
superior, Dan Urankar." Pl. Mem. [150] at 6. The privilege log describes the privilege governing
the redactions as "Attorney/Client privilege." *Id.* And while both Holiday-Crandall and Urankar
"have law degrees, neither of them acted as an attorney in this case." *Id.*

     Defendants respond by explaining that the redacted portion of the LLN memorializes
"privileged communications from counsel for . . . Defendants." Defs. Mem [153]. Having
reviewed the contents of the redacted portion *in camera*, the undersigned concludes that the final
sentence of the redacted paragraph does indeed report legal advice defense counsel gave the
LLN's author(s). *See Hodges, Grant & Kaufmann v. U.S. Gov't, Dep't of the Treasury, IRS*, 768
F.2d 719, 720 (5th Cir. 1985) ("The [attorney-client] privilege . . . protects communications from
the lawyer to his client, at least if they would tend to disclose the client's confidential
communications." (footnote omitted)).[3] That sentence is privileged.

---

[3] Neither party addresses choice of law, and Ramos cites federal privilege cases. But under
Federal Rule of Evidence 501, because "state law supplies the rule of decision," "state law
governs privilege." The Court need not address the choice-of-law issue because Louisiana and

It is unclear, however, whether the first four sentences of the redacted paragraph memorialize a privileged communication to or from counsel—the Court simply cannot tell. Perhaps Defendants could have submitted a declaration from the LLN's author(s) that would have shown that the entire paragraph is subject to the attorney-client privilege. But based on the contents of the rest of the paragraph, it appears to the Court that the redacted information may represent facts known to the LLN's author(s), which are not privileged "merely because [they] incorporated a statement of such fact into [their] communication to [their] attorney." *Adams v. Mem'l Hermann*, 973 F.3d 343, 349 (5th Cir. 2020) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 396 (1981)). On the current record, the Court concludes Defendants have not met their burden to show that the first four redacted sentences on the June 2024 LLN are privileged. *See BDO USA*, 876 F.3d at 695 ("Determining the applicability of the [attorney-client] privilege is a 'highly fact-specific' inquiry, and the party asserting the privilege bears the burden of proof." (quoting *Stoffels v. SBC Commc'ns, Inc.*, 263 F.R.D. 406, 411 (W.D. Tex. 2009)). The Court directs Defendants to produce, on or before March 5, 2025, a version of the document Bates labeled DEFENDANTS 007554–55 in which only the final sentence of the redacted paragraph remains redacted.

C.    Dates for Lacy Deposition

The next dispute concerns scheduling the deposition of Cheryl Lacy. Defendants have offered March 4 and 6 as dates for Lacy's deposition, but Ramos says his lead counsel will be in

---

Mississippi law are consistent with each other and federal law on this point. *See City of Pascagoula v. Cumbest*, --- So. 3d ----, No. 2022-CA-745-COA, 2024 WL 1266748, at *12 (Miss. Ct. App. Mar. 26, 2024) (explaining that privilege includes "communications made by the client to the attorney and by the attorney to the client" (quoting *Hewes v. Langston*, 853 So. 2d 1237, 1244 (Miss. 2003)); *Hoerner v. Anco Insulations, Inc.*, 729 So. 2d 640, 645 (La. Ct. App. 1999).

trial in another matter the entire week of March 3. Ramos therefore asks the Court to order Defendants "to provide other available dates for Ms. Lacy's deposition that are not during the week of March 3rd." Pl. Mem. [150] at 10.

Defendants again begin by arguing that "[t]he Court did not conduct a conference concerning the March 4 and 6 dates offered for the Cheryl Lacy deposition and did not authorize a motion to compel to be filed on that topic." Defs. Mem. [153] at 3. Defendants are overlooking the big picture. On February 5, the Court conducted its first discovery conference concerning deposition dates for Lacy. This followed Ramos's January 22 letter asking for deposition dates for Lacy, to which Ramos claimed Defendants failed to respond. During the February 5 discovery conference, Defendants stated they had not obtained dates for Lacy because Ramos's January 22 letter requested dates for multiple witnesses, the total request exceeded the maximum number of witnesses Ramos is allowed to depose, and Defendants were unsure which of the several witnesses Ramos wished to be his tenth (final allowed) deposition. Ramos selected Lacy for this final deposition, and the parties represented to the Court they would work together to set it as soon as possible. When the parties again asked to confer with the Court on February 14, Defendants had not yet provided depositions dates to Ramos for Lacy. During that conference, Defendants represented that they had a call with Lacy scheduled for February 17 and would provide dates to Ramos after that. The Court authorized Ramos to move to compel if Defendants failed to provide dates by February 19. So while the actual dates Defendants later provided—and Ramos's counsel's conflict with them—were not specifically discussed, the issue was sufficiently raised to permit Ramos's motion. Moreover, it is unclear why Defendants waited until 12 days after the February 5 conference to obtain deposition dates from Lacy when it was

represented to the Court the deposition would be set as soon as possible. Whether her deposition *could* have been set sooner had Defendants contacted Lacy earlier than February 17 is unclear.

Turning to the merits, Defendants say that while Ramos's lead counsel will be in trial next week, Ramos has not shown why either of his other two attorneys of record cannot adequately cover Lacy's deposition. As Defendants correctly note, it is regrettable that Ramos's lead counsel "has a trial the last week of discovery, [but] that is what the schedule provides." Defs. Mem. [153] at 5. In rebuttal, Ramos says that lead counsel is Ramos's "trial attorney," and he "should be permitted to have his trial attorney depose the limited number of witnesses allowed during this compressed discovery period." Pl. Rebuttal [156] at 10.

At this point, there's almost no time to schedule Lacy's deposition within the discovery period unless one of Ramos's other attorneys covers the deposition next week or all parties are available to schedule the deposition for March 10. Ramos offers the latter as an option, and it's not clear whether Lacy is available for a deposition on March 10. Perhaps this scheduling problem could have been avoided had Defendants acted more diligently in obtaining dates for Lacy. It should not have been necessary to *again* discuss the lack of dates for Lacy at the February 14 conference following the conference on February 5. If the deposition can be taken by video conference that day, the Court orders the parties to go forward on March 10. If March 10 is not feasible, the Court orders Defendants to make Lacy available for a video-conference deposition on either March 11 or 12. Lacy's deposition shall be the only discovery permitted after the March 10 discovery deadline.

D.    Unredacted Holiday-Crandall Claim Notes

Finally, Plaintiff asks the Court to compel Defendants to produce unredacted copies of claims notes written by Michelle Holiday-Crandall. Defendants are correct that Ramos failed to

discuss this issue in a telephonic discovery conference with the undersigned before including it in his motion. In rebuttal Ramos explains that Holiday-Crandall was deposed after the February 14 discovery conference and "the issue of redactions made to her claims notes" arose at her deposition. Pl. Rebuttal [156] at 3–4. It is not entirely clear to the Court when Defendants first served a privilege log concerning these notes, but the Court has repeatedly addressed concerns about the sufficiency of Defendants' privilege logs—including as recently as February 14. Additionally, the log attached to Ramos's motion is dated February 19, which indicates it was perhaps the outstanding log addressed on February 14. To be clear, Defendants should have promptly served a log with their production. "To withhold materials without such notices subjects the withholding party to sanctions under Fed. R. Civ. P. 37 and may be viewed as a waiver of the privilege or protection." *See* L.U. Civ. R. 26(e). This issue is not squarely before the Court, but it bears mentioning because Defendants criticize Ramos's compliance with the Local Rules. Although time is short, Ramos should have scheduled a discovery conference with the Court on this issue. Nevertheless, because this portion of the motion will be denied on the merits, the Court will address it.

Defendants explain that the claims notes in question span the period from May 2023 to November 2024—after this suit was filed. And, as confirmed by the undersigned's *in camera* review, each redaction memorializes the contents of Holiday-Crandall's (and then, beginning November 12, 2024, adjuster Michael Jones's) conversations with counsel representing Hartford in this case about the litigation itself. While it may be unusual that Defendants were still

adjusting the claim after litigation began, the redacted notes are subject to the attorney-client privilege.[4] Defendants need not lift the redactions; this portion of Ramos's motion is denied.

IV.    Conclusion

        The Court has considered all arguments. Those not directly addressed would not have changed the outcome. For the foregoing reasons, Ramos's Motion to Compel [149] is granted as to the redactions to the April 2023 workers' compensation LLN and a portion of the redaction of the June 2024 LLN. It is further granted to the extent that the parties are directed to schedule Lacy's deposition for March 10 if feasible. If not, Defendants shall make Lacy available for a deposition on March 11 or 12. Only Lacy's deposition may take place beyond the March 10 discovery deadline. The motion is otherwise denied. Defendants' request for an award of attorney's fees is likewise denied.

        **SO ORDERED AND ADJUDGED** this the 28th day of February, 2025.

                                        s/ *Andrew S. Harris*_____
                                        UNITED STATES MAGISTRATE JUDGE

---

[4] Ramos says he needs the redactions lifted because Holiday-Crandall could not recall when she "received and considered various documents." Pl. Mem. [150]. He doesn't specify which documents, and presumably, once the case was in litigation—so during the entire time covered by these claim notes—those documents were coming from Ramos's counsel. Surely Ramos's counsel knows when they sent various documents to Defendants (also presumably through defense counsel).