UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

RAYNALDO RAMOS                                                                                           PLAINTIFF

V.                                                                         CIVIL ACTION NO. 3:23-CV-235-DPJ-ASH

HARTFORD ACCIDENT AND INDEMNITY                                                                  DEFENDANTS
COMPANY, ET AL.

ORDER

This case is before the Court on Plaintiff Raynaldo Ramos's Motion to Compel. Mot. [199]. As explained below, the Court denies Ramos's motion.

I.   Facts and Procedural History

The underlying facts are set forth in the Court's previous orders. Discovery in this case closed on March 10, 2025. On March 17, 2025, Defendants Hartford Accident and Indemnity Company and Twin City Fire Insurance Company[1] filed a declaration from corporate representative Daniel Urankar in support of their motion for summary judgment. Ramos describes Urankar's declaration as "identif[ying] specific communications between defense counsel and [adjuster] Holiday-Crandall, as well as specific communications among Hartford personnel discussing communications from defense counsel" and "selectively disclos[ing] the contents of the communications." Pl. Mem. [200] at 2. Ramos says Urankar's "selective[] disclos[ure]" of "information about attorney-client communications . . . waived any privilege protecting" those communications themselves "as well as any other attorney-client communications on the same subject." *Id.* at 2–3. He therefore asks the Court to compel Defendants to produce (1) a fully unredacted copy of the June 2024 Large Loss Notice, (2) an

---

[1] The parties refer to Defendants collectively as "Hartford." The Court does the same.

unredacted copy of Holiday-Crandall's claims notes, and (3) "all communications referenced in Mr. Urankar's declaration, and all documents reflecting such communications." *Id.* at 16. Hartford opposes Ramos's motion.

II.     Analysis

Hartford correctly notes that Ramos's motion is untimely. L.U. Civ. R. 7(b)(2)(C). But because it is also due to be denied on the merits, the Court need not consider whether to excuse its untimeliness.

"The attorney-client privilege exists to encourage clients to be candid with their attorneys." *Indus. Clearinghouse, Inc. v. Browning Mfg. Div. of Emerson Elec. Co.*, 953 F.2d 1004, 1007 (5th Cir. 1992).[2] Under the privilege, a client may "refuse to disclose, and prevent its attorneys from disclosing, confidential communications between its representatives and its attorneys when the communications were made to obtain legal services." *Nguyen v. Excel Corp.*, 197 F.3d 200, 206 (5th Cir. 1999). But the privilege may be waived, and "a client implicitly waives the attorney-client privilege by testifying about portions of the attorney-client communication." *Id.* at 207. In particular, "disclosure of any significant portion of a confidential communication waives the privilege as to the whole." *Id.* at 208 (quoting *Indus. Clearinghouse, Inc.*, 953 F.2d at 1007) (cleaned up).

Additionally, "a client waives the privilege by affirmatively relying on attorney-client communications to support an element of a legal claim or defense—thereby putting those

---

[2] As the Court noted in a previous order, "under Federal Rule of Evidence 501, because 'state law supplies the rule of decision' [in this case,] 'state law governs privilege.'" Order [157] at 6 n.3. Ramos acknowledges this and, based on the Court's earlier conclusion that "Louisiana and Mississippi law are consistent with each other and federal law" on the point at issue in the prior order, *id.*, relies primarily on federal cases in support of its present motion. Defendants follow suit, so the Court will as well.

2

communications 'at issue' in the case." *In re Itron, Inc.*, 883 F.3d 553, 558 (5th Cir. 2018). "'In other words, when a party entitled to claim the attorney-client privilege uses confidential information against his adversary (the sword), he implicitly waives its use protectively (the shield) under that privilege." *Id.* (quoting *Willy v. Admin. Review Bd.*, 423 F.3d 483, 497 (5th Cir. 2005)). "[F]or this type of waiver to occur, the client 'must *rely* on privileged advice from his counsel to make his claim or defense.'" *Id.* at 561 (quoting *In re County of Erie*, 546 F.3d 222, 229 (2d Cir. 2008)). Mississippi has adopted the at-issue concept of waiver. *Jackson Medical Clinic for Women, P.A. v. Moore*, 836 So. 2d 767, 773 (Miss. 2003).

So the question is whether Urankar disclosed "a[] significant portion of a confidential communication," *Nguyen*, 197 F.3d at 208, or Hartford "'*rel[ied]* on privileged advice from [its] counsel to make [its] claim or defense,'" *In re Itron*, 883 F.3d at 561 (quoting *In re County of Erie*, 546 F.3d at 229). Urankar's declaration says:

> The Life Care Plan was sent to counsel on April 26, 2024, as part of Plaintiff's expert disclosure in this litigation. Defense counsel provided that report to Michelle Holiday-Crandall on May 1, 2024.
>
> After conversations with Defense counsel, given the length of the document itself—169 pages—the breadth of the recommended medical treatment, and broad value range presented in the life care plan, (a low value of $8,740,816 and a high value of $14,616,578), it was agreed that Defense counsel would perform an initial evaluation of the life care plan and report back to the Hartford with that evaluation.
>
> Defense counsel did their evaluation and reported their recommendations on May 17, 2024. That correspondence did not go through and was resent on May 20, 2024.
>
> A review of the life care plan was made by Michelle Holiday-Crandall and after the Memorial Day holiday, on May 29, 2024, she spoke with me, conveyed her recommendations as well as defense counsel's recommendations and a round table meeting was requested and set up that day. I agreed with her recommendation that the life care plan seemed reasonable.

> At that time, Kevin LaFreniere was the Senior Vice President of Claims and Liability and was the person within the Hartford that had the final authority to approve the payment of the $1,000,000 and $5,000,000 policy limits. As this was during late May/early June, scheduling a meeting around everyone's respective calendars was a little more difficult. The earliest day that the meeting could be scheduled, and all required parties were able to participate, was on June 11, 2024. The meeting took place that day.
>
> At that meeting, it was determined that the limits of the policy should be paid and that payment was approved by Kevin LaFreniere.
>
> Since the life care plan was not presented as a demand, but rather as part of Plaintiff's expert disclosure, we believed that we had 60 days to approve and issue the payment [under Louisiana law.]
>
> . . . .
>
> As reflected in the Claim Notes, the first settlement check was issued three days later on June 17, 2024. The second check was issued the next day on June 18, 2024, and both were sent out via two-day mail to Defense counsel for delivery to Plaintiff's counsel.

Urankar Decl. [193] ¶¶ 4–12 (paragraph numbers omitted). Ramos argues that these paragraphs "provide[] details about the substance of the communications between defense counsel and Hartford's personnel": they reflect "that defense counsel and Hartford personnel discussed the life care plan and formed an agreement with defense counsel about what defense counsel would do next" and that Hartford personnel concluded following their internal conference on June 11 "that the life care plan seemed reasonable." Pl. Mem. [200] at 3–4.

But nothing in Urankar's declaration discloses the substance of any *protected* communication, *i.e.*, a communication between Hartford and its counsel. *See Indus. Clearinghouse, Inc.*, 953 F.2d at 1007 ("The attorney-client privilege protects only evidence of [attorney-client] communications; it 'does not protect against discovery of underlying facts from their source merely because those facts have been communicated to an attorney.'" (quoting *United States v. El Paso Co.*, 682 F.2d 530, 538–39 n.10 (5th Cir. 1982)). The only

4

communication whose substance is revealed is one between Holiday-Crandall and Urankar where Holiday-Crandall advised that *she* believed the life care plan was reasonable and Urankar agreed. *Cf. Nat'l W. Life Ins. Co. v. W. Nat'l Life Ins. Co.*, No. 09-CA-711, 2010 WL 5174366, at *7 (W.D. Tex. Dec. 13, 2010) ("General assertions that a party's attorney has examined a certain matter is not sufficient to waive the attorney-client privilege."); *see also Nguyen*, 197 F.3d at 206 ("Inquiry into the general nature of the legal services provided by counsel does not necessitate an assertion of the privilege because the general nature of services is not protected by the privilege."). There is no suggestion that the substance of a conversation between Holiday-Crandall and Urankar is protected by the attorney-client privilege.

Ramos also says that Urankar's declaration "relies upon the attorney-client communications . . . to assert that Hartford had a subjective (and mistaken) belief about Louisiana law." Pl. Mem. [200] at 4. But the paragraph Ramos relies on does not reference any communications; Ramos merely supposes that some privileged underlying communications must have informed Hartford's "belie[f] that [it] had 60 days to approve and issue the payment" upon receipt of the life care plan. Urankar Decl. [193] ¶ 10. "'[T]he overwhelming majority of courts . . . find [an implied] waiver only when the specific allegations of [a pleading] refer to the content of a privileged communication' or 'when it is clear that the litigant's argument is that [it] w[as] relying on privileged advice from attorneys.'" *In re Itron*, 883 F.3d at 561 (quoting 2 The New Wigmore: A Treatise on Evidence s 6.12.4(b) (3d ed. 2017)). It is not apparent, and certainly not clear, that Hartford has placed privileged communications in issue. *See id.* at 560 (concluding that complaint that "mentions no attorneys, no attorney-client communications, and no attorney-client relationships" did not "use[] the attorney-client privilege as a sword" and noting that "a person reading the complaint would have no idea that Itron even *had* attorneys [involved] were it

5

not for the common-sense understanding that corporations engaged in prolonged, multimillion-dollar lawsuits tend to employ counsel"); *Jackson Medical Clinic*, 836 So. 2d at 773 (finding waiver where plaintiff "specifically pled reliance on [counsel's] advice as an element of her defense" and "[c]learly . . . voluntarily testified regarding communications with [counsel]").

The Court concludes that Urankar's declaration did not selectively disclose privileged communications. Additionally, Urankar's declaration does not demonstrate that Hartford is "'*rely[ing]* on privileged advice from [its] counsel to make [its] claim or defense.'" *In re Itron*, 883 F.3d at 561 (quoting *In re County of Erie*, 546 F.3d at 229). At most, the Urankar declaration merely reveals that Hartford sought counsel's review of the life care plan. This disclosure is insufficient to support a waiver. Absent any waiver, Ramos is not entitled to disclosure of privileged communications.

III.     Conclusion

The Court has considered all arguments. Those not directly addressed would not have changed the outcome. For the foregoing reasons, Ramos's Motion to Compel [199] is denied.

**SO ORDERED AND ADJUDGED** this the 13th day of June, 2025.

                                             s/ *Andrew S. Harris*
                                             UNITED STATES MAGISTRATE JUDGE