UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

RAYNALDO RAMOS                                                                              PLAINTIFF

V.                                                           CIVIL ACTION NO. 3:20-CV-619-DPJ-ASH

HARTFORD ACCIDENT AND                                                                    DEFENDANTS
INDEMNITY CO., et al.

ORDER

Plaintiff Raynaldo Ramos and the Defendant insurance companies (collectively "Hartford") have filed eight motions asking the Court exclude evidence. After studying the motions and discussing them with the parties during the pretrial conference, the Court will rule on five of the eight:

- [234] Hartford's Motion in Limine to Exclude Reference to Cary Hickman's Intoxication at the Time of the Accident;

- [236] Hartford's Motion in Limine to Preclude Plaintiff from Offering Testimony Regarding Any Amount that Hartford Should Have Tendered to Plaintiff for his UIM Claim, or Alternatively, Limiting That Amount to $100,000;

- [239] Hartford's Motion in Limine Concerning Pre-Judgment Interest;

- [240] Ramos's Motion in Limine to Exclude and/or Limit Evidence and Argument Contrary to Applicable Louisiana Law Regarding Insurer Bad Faith and Workers' Compensation; and

- [244] Ramos's Motion in Limine to Exclude and/or Limit Evidence and Argument that is Irrelevant, Unfairly Prejudicial and/or Otherwise Inadmissible.

I.   Standard

As summarized by the Fifth Circuit:

> A motion in limine is a motion made prior to trial for the purpose of prohibiting opposing counsel from mentioning the existence of, alluding to, or offering evidence on matters so highly prejudicial to the moving party that a timely motion to strike or an instruction by the court to the jury to disregard the offending matter cannot overcome its prejudicial influence on the jurors' minds.

*O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1306 n.1 (5th Cir. 1977) (citation and quotation omitted). As with all in limine orders, the non-prevailing party may revisit the issue at trial outside the jury's presence. *Jackson-Hall v. Moss Point Sch. Dist.*, No. 3:11-CV-42-DPJ-FKB, 2012 WL 1098524, at *4 (S.D. Miss. Apr. 2, 2012).

But "a motion in limine cannot be a substitute for a motion for summary judgment, a motion to dismiss, or a motion for directed verdict." *Id*. at *6 (quoting *Morgan v. Mississippi*, No. 2:07-CV-15-MTP, 2009 WL 3259233, at *1 (S.D. Miss. Oct. 8, 2009)); *see also* 21 *Federal Practice and Procedure* § 5037.18 (stating "the preexisting caselaw provides ammunition against those who would use the motion in limine as a substitute for a motion for summary judgment or other peremptory ruling in civil cases"). "[G]enerally, doubts should be resolved in favor of admissibility." *United States v. Cent. Gulf Lines, Inc.*, 974 F.2d 621, 625 (5th Cir. 1992).

II.   Discussion

The Court entered two orders denying summary-judgment motions. *See* Orders [260, 79]. Those Orders discuss the factual and procedural history and consider the legal framework for Ramos's claims. They are incorporated herein; the Court will not take another deep dive into the underlying law but will mention it for context.

      A.      Hartford's Motion [234]:  Evidence of Intoxication

Hartford moves [234] to exclude evidence that uninsured motorist Cary Hickman was intoxicated when he collided with Ramos's van.  It says the evidence is irrelevant under Federal Rule of Evidence 401 and unduly prejudicial under Rule 403.  Defs.' Mot. [234] at 3.

To begin, Hickman is in default, and the Court bifurcated the damages claims against him from Ramos's bad-faith claims against Hartford.  It also appears that Hickman is now dead.  So, there is no need for Ramos to prove either Hickman's fault or the damages against him in the trial against Hartford.  The only thing the jury will determine is whether Hartford was required to tender some payment on the UM claim sooner than it did.

That question depends on what Hartford knew and when it knew it, so the Court grants this motion to the extent that Ramos would offer evidence outside Hartford's claim file to prove Hickman's intoxication.  *See* Fed. R. Evid. 401–403.  But Hartford believes the Court should go further and remove any references to intoxication in its claim file.  The Court concludes that Hickman's intoxication is relevant to the bad-faith claim.

Under Louisiana law, an insurer faces differing statutory penalties if it fails to pay a claim within 30 or 60 days of receiving "satisfactory proof of loss," if the decision is "arbitrary, capricious, or without probable cause."  *Hart v. Allstate Ins. Co.*, 437 So. 2d 823, 828 (La. 1983); s*ee* La. R.S. § 22:1973(B)–(C) or La. R.S. § 22:1892(B)(1).  "[S]atisfactory proof of loss" has three factors, including satisfactory proof that the uninsured driver "was at fault."  *Id.*  Ramos argues that the jury must therefore decide when Hartford had satisfactory proof of Hickman's fault and that his intoxication speaks to that issue.  Pl.'s Mem. [254] at 3.

There is no dispute that Hartford knew Hickman was intoxicated once it received the accident report—which also blamed Hickman for the accident.  But Hartford did not fully

3

concede Hickman's fault—and therefore this *Hart* factor—until several years later. In its Answer, Hartford pleaded lack of information whether Hickman ran a red light and crashed into Ramos. Ans. [4] ¶¶ 12, 13. And it flatly denied that "[a]s a direct proximate result of the careless, reckless, and negligent acts of the Defendant driver, CARY HICKMAN, Plaintiff suffered serious and permanent injuries to his person." Compl. [1-1] ¶ 14; *see* Ans. [4] ¶ 14. Then, on January 5, 2024, Hartford responded to Ramos's request for admissions and claimed that it lacked sufficient information to admit or deny Hickman's fault. RFA Resp. [253-7] at 1–3. A year and a half later—and almost four years after the accident—Hartford admitted that Hickman was 100% at fault. *See* RFA Resp. [253-11] at 4.

There is a fact question when Hartford received satisfactory proof of all three *Hart* factors, including Hickman's fault. And that timing is relevant to Ramos's consequential damages. In short, Hickman's intoxication is relevant to his fault because it offers a potential reason for running the red light. Hartford's knowledge of his intoxication is therefore relevant to determining when Hartford received satisfactory proof of this *Hart* factor. While there is some potential for prejudice, that prejudice does not "substantially outweigh" the probative value. Fed. R. Evid. 403.

The motion is therefore denied to the extent Hartford seeks to redact all reference to intoxication from its claim file. The Court will, however, preclude additional evidence related to this issue because it would be cumulative, a waste of time, and unfairly prejudicial to an extent necessary to violate Rule 403.

  B.  Hartford's Motion [236]: Proof of Specific Amount Payable

Hartford moves to exclude testimony of a Hartford employee, Brett Bielinski, and any other evidence, testimony, or argument to the effect that Hartford "should have paid a specific

amount on any specific date." Defs.' Mot. [236] at 3.  Bielinski arguably agreed during his deposition that as of November 2021, Hartford knew enough to support a reasonable tender amount of $100,000.  Bielinski Dep. [211-7] at 114–15.

Like its summary-judgment motions, Hartford says that because Ramos never produced "any proof of his claim's *value*" before suing, he should be precluded from alleging Hartford had a duty to pay him.  Defs.' Mot. [236] at 2, 3 (Hartford's emphasis).  But Ramos had no duty to provide an exact amount.  *See* Order [260] at 9 (addressing *McDill v. Utica Mut. Ins. Co.*, 475 So. 2d 1085 (La. 1985)).  And, under *McDill*, Ramos's theory is that no matter what the exact amount might be, Hartford knew more than 60 (or 30) days before it tendered its limits that Ramos had satisfied the *Hart* requirements and was entitled to more than $0, yet Hartford paid nothing.

Ultimately, the Court concludes that this information should not be addressed in limine. There are fact questions about whether, when, and to what extent Hartford was required to make a *McDill* tender.  Ramos may pursue his theory about what was owed under *McDill* based on what Hartford knew, which may include examining Bielinski's testimony.

D.     Hartford's Motion [239]:  Prejudgment Interest

During the pretrial conference, the parties agreed to submit both prejudgment and post-judgment interest to the Court should the jury return a verdict for Ramos.  As such, any evidence or argument regarding interest would be irrelevant, unfairly prejudicial, confusing, and a waste of time.  *See* Fed. R. Evid. 403.  This motion is granted.

E.     Ramos's Motion [240]:  Evidence or Argument Contrary to Louisiana Law

Ramos identifies six categories of evidence he wants excluded.

5

### 1. Failure to Make a Demand; Legal Requirement of Demand.

First, Ramos wants Hartford barred from proving or arguing that Ramos failed to make a demand for payment. Pl.'s Mem. [241] at 1–2. He says the facts show his attorneys made several demands. *Id*.

To begin, "a motion in limine cannot be a substitute for a motion for summary judgment, a motion to dismiss, or a motion for directed verdict." *Jackson-Hall*, 2012 WL 1098524, at *6. As the Court noted in its more recent order denying summary judgment, "[w]hat constitutes demand . . . is to be determined in the light of the facts and circumstances of each individual case." *Wilkins v. Allstate Ins. Co.*, 173 So. 2d 199, 202 (La. Ct. App. 1965). So Hartford can dispute whether Ramos's demands really counted as demands under section 22:1892(B)(1). The motion is denied to this extent, but Hartford may not make arguments inconsistent with the Court's preliminary instructions on what constitutes a demand under Louisiana law.

### 2. "Amount Certain" Evidence and Argument

Ramos asks to exclude evidence and argument "incorrectly stating or otherwise implying that Mr. Ramos was required to, or failed to, demand payment for a specific dollar amount under Defendants' insurance policies." Pl.'s Mem. [241] at 6. Again, Hartford may address whether the Ramos made a demand, as defined by Louisiana law, but it may not make arguments that conflict with Louisiana law. Any argument inconsistent with Louisiana law will be precluded.

### 3. Separate Payment Demand with Expert Disclosures

One dispute is whether Ramos was required to submit a demand with his expert's life-care plan. *Id*. at 9. Again, what counts as a "demand" for purposes of section 22:1892's requirement is a fact dispute, dependent on the circumstances of the case. Factually, Hartford

may explore whether the life-care plan was a demand, but any argument inconsistent with Louisiana law will be precluded.

### 4. No Duty to Investigate Ramos's Claim

Citing several state and federal cases out of Louisiana, Ramos says Hartford had an independent duty to investigate his UM claim, so the Court should exclude any evidence or argument to the contrary. *Id*. at 11–13. Hartford does not dispute this, Defs.' Resp. [257] at 16, so the motion is granted in that regard.

### 5. Ramos's Workers'-Compensation Claims

The Court defers ruling on this category.

### 6. No Claim of Reliance on Counsel

Lastly, Ramos asks the Court to preclude Hartford from arguing that it relied on advice of counsel. Hartford concedes the point, so the motion is granted. Defs.' Resp. [257] at 16.

F.   Ramos's Motion [244]:  Miscellaneous Issues

The last motion this Order addresses is Ramos's omnibus motion in limine [244].

### 1. Suggesting a Plaintiff's Verdict Would Raise Insurance Premiums

Hartford conceded this issue during the pretrial conference. The motion is therefore granted.

### 2. Ramos's Alleged Prior Drug Use and Criminal Conviction

Ramos wants to exclude any evidence that he used marijuana or other illicit drugs before the accident. Pl.'s Mem [245] at 3. He similarly seeks to exclude a decades-old drug-related conviction. *Id.* at 4. During the pretrial conference, Hartford conceded these points provided Ramos doesn't open the door by suggesting that Hartford caused him to use illegal drugs after

7

the accident. The motion is granted. If Ramos opens the door, then Hartford should first address the issue outside the jury's presence.

### 3. Video Surveillance of Ramos by Hartford

Hartford states that no such evidence exists, so this part of the motion is granted. Defs.' Resp. [258] at 5.

### 4. Timing of Depositing Hartford's Checks

As Ramos notes, Hartford has made some noise about Ramos's delay in depositing the policy-limits tender, perhaps suggesting that Ramos didn't need the money. Pl.'s Mem. [245] at 6 (citing Defs.' SJ Mem. [195] at 15). Whether Ramos "needed" a *McDill* tender is not a factor in whether Hartford was required to make one. Plus, the argument would be unfairly prejudicial under Rule 403.

That said, Hartford explains that it has no intention of arguing that Ramos must not have needed the money. But it does oppose this motion on two grounds. It first likens this fact to the argument that Ramos's delays in producing a life-care plan prove Hartford did not act arbitrarily, capriciously, or without probable cause when it delayed payment until after reviewing the life-care plan. Defs.' Resp. [258] at 5–7. This argument is not persuasive because depositing the funds has no apparent connection to the time it would take to determine the extent of injuries.

Hartford's next argument is better but underdeveloped. It claims Ramos failed to mitigate his damages by waiting so long to deposit the money. *Id.* at 6. Delaying deposit of such a large amount could conceivably raise mitigation issues. *See Zink v. Chevron U.S.A., Inc.*, No. CIV. A. 89-4923, 1992 WL 300816, at *11 (E.D. La. Oct. 8, 1992), *aff'd*, 19 F.3d 14 (5th Cir. 1994) (recognizing possibility that failing to accept tender sooner might jeopardize interest). But Hartford doesn't identify how the delay increased the damages Ramos seeks from Hartford.

8

While the probative value remains unclear, the risk of potential unfair prejudice exists and substantially outweighs it.

For these reasons, the Court grants this portion of Ramos's motion but will defer final ruling until trial. Hartford is invited to revisit the issue at trial if it can show that damages Ramos seeks could have been reasonably avoided by depositing the funds sooner.

### 5. Extensions of Court Deadlines

Likewise, Hartford faults Ramos for how long it took him to present a life-care plan, so Ramos wants to exclude any evidence or argument about the discovery-deadline extensions he obtained. Pl.'s Mem. [245] at 7–8. According to Hartford,

> [t]he delay of Plaintiff's own counsel in providing Hartford with a life care plan valuing Plaintiff's injuries (signaling their own inability to place a dollar on Plaintiff's injuries), repeated requests for extensions of expert designations and continuance of settlement conference settings because they themselves were not yet armed with enough information to meaningfully participate in settlement discussions goes directly to a failure to mitigate Plaintiff's damages.

Defs.' Resp. [258] at 5. Here too, Hartford relies on general mitigation principles but has not explained how Ramos failed to mitigate specific damages he seeks from Hartford. The Court will therefore grant this portion of Ramos's motion to the extent that it would preclude argument that the delays reflect a failure to mitigate, but it defers final ruling until trial. Hartford may revisit the issue if it can show how the delay caused Ramos to fail to mitigate damages he is seeking from Hartford.

Otherwise, the motion is denied. Hartford may offer this evidence because it buttresses its argument that it did not act arbitrarily, capriciously, or without probable cause after receiving the life-care plan.

9

      6.      Witnesses, Exhibits, and Opinions Not Timely Disclosed

Ramos generically moves to exclude any Hartford witnesses, exhibits, or expert opinions it did not timely disclose. Pl.'s Mem. [245] at 10–12. If either party seeks to offer undisclosed witnesses or exhibits, the opponent may raise a timely objection. This part of Ramos's motion is denied.

IV.    Conclusion

The Court has considered all arguments presented; any not specifically addressed here would not affect the result. The Court rules as follows:

- [234] Hartford's Motion in Limine to Exclude Reference to Cary Hickman's Intoxication at the Time of the Accident is granted in part;

- [236] Hartford's Motion in Limine to Preclude Plaintiff from Offering Testimony Regarding Any Amount that Hartford Should Have Tendered to Plaintiff for his UIM Claim, or Alternatively, Limiting that Amount to $100,000 is denied;

- [239] Hartford's Motion in Limine Concerning Pre-Judgment Interest is granted;

- [240] Ramos's Motion in Limine to Exclude and/or Limit Evidence and Argument Contrary to Applicable Louisiana Law Regarding Insurer Bad Faith and Workers' Compensation is granted in part and taken under advisement in part; and

- [244] Ramos's Motion in Limine to Exclude and/or Limit Evidence and Argument that is Irrelevant, Unfairly Prejudicial and/or Otherwise Inadmissible is granted in part.

**SO ORDERED AND ADJUDGED** this the 25th day of June, 2025.

                                              s/ *Daniel P. Jordan III*
                                              UNITED STATES DISTRICT JUDGE