UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

RAYNALDO RAMOS                                                                           PLAINTIFF

V.                                                            CIVIL ACTION NO. 3:23-CV-235-DPJ-ASH

HARTFORD ACCIDENT AND INDEMNITY
COMPANY, TWIN CITY FIRE INSURANCE
COMPANY, and CARY HICKMAN                                                             DEFENDANTS

ORDER

In this bad-faith insurance case, the parties move to exclude the other's expert witnesses. *See* Pl.'s Mots. [170, 172, 174]; Defs.' Mot. [168] (Crichton). Having fully considered the parties' positions, the Court strikes Plaintiff's expert Scott J. Crichton and Defendants' expert C. Maison Heidelberg. It also grants in part the motions to exclude Defendants' experts Bernd G. Heinze and James L. Henley, Jr.

I.   Background

In February 2021, an intoxicated, uninsured driver ran a red light and crashed into Plaintiff Raynaldo Ramos's van causing Ramos significant injuries. State Ct. Rec. [1-1] (Complaint) at 2–3. Ramos claims that the Defendant insurers, Hartford Accident and Indemnity Co. and Twin City Fire Insurance Co. ("Hartford"), acted in bad faith because they paid nothing on his uninsured-motorist claim for over three years. Both sides designated attorneys among their expert witnesses and now move to strike those witnesses in whole or in part.

II.  Standard

As recently amended, Federal Rule of Evidence 702 allows admission of expert testimony if its proponent shows four elements by a preponderance of the evidence:

> (a) the expert's scientific, technical, or other specialized knowledge will help the
> trier of fact to understand the evidence or to determine a fact in issue;

> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), Rule 702 requires the district court to act as a gatekeeper to ensure "any and all scientific testimony or evidence admitted is not only relevant, but reliable." This gatekeeping function applies to all forms of expert testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). The party offering the testimony bears the burden of establishing its admissibility by a preponderance of the evidence. *United States v. Kuhrt*, 788 F.3d 403, 420 (5th Cir. 2015).

As gatekeeper, the Court examines reliability and relevance. Reliability means the validity of the expert's reasoning and methodology underlying the testimony. *See Daubert*, 509 U.S. at 593. The Court must exclude opinions based merely on subjective belief or unsupported speculation. *See id.* at 590. "[F]undamentally unsupported" opinions "offer[ ] no expert assistance to the [trier of fact]" and should be excluded. *Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005).

Reliability factors may include (1) whether a technique has been tested, (2) whether it's been subjected to peer review and publication, (3) its potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community. *Burleson v. Tex. Dep't of Crim. Just.*, 393 F.3d 577, 584 (5th Cir. 2004). But these factors "do not constitute a 'definitive checklist or test.'" *Kumho*, 526 U.S. at 150 (quoting *Daubert*, 509 U.S. at 593). Rather, courts "must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id.* at 152.

"The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007) (citation omitted). "Where the expert's opinion is based on insufficient information, the analysis is unreliable." *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009). And "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). "A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Id.*

As for relevance, the Court asks whether the expert's reasoning or methodology "fits" the facts of the case and will thereby assist the trier of fact to understand the evidence. *See Daubert*, 509 U.S. at 591. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id.* (quoting 3 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 702[02] (1988)).

The Court's gatekeeper function replaces neither the traditional adversary system nor the jury's role. *See id.* at 596. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* Thus, in determining the admissibility of expert testimony, the district court must accord the "proper deference to the jury's role as the arbiter of disputes between conflicting opinions." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)). Whether the expert's opinions are correct is not for the Court to decide. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc).

All four experts here are attorneys. "Merely being a lawyer does not disqualify one as an expert witness. Lawyers may testify as to legal matters when those matters involve questions of fact." *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997). But "allowing an expert to give [their] opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant." *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983). It is therefore settled that "[e]xperts cannot render conclusions of law or provide opinions on legal issues." *Renfroe v. Parker*, 974 F.3d 594, 598 (5th Cir. 2020) (quotation marks omitted). It's the Court's province to instruct the jury on the law, not the parties'. *Askanase*, 130 F.3d at 673; *see also Old Canton Rd. Apartments, Ltd. v. Topvalco, Inc.*, No. 3:20-CV-797-DPJ-FKB, 2023 WL 2575563, at *4 (S.D. Miss. Mar. 20, 2023).

III. Discussion

A crucial issue in this case is whether Hartford had a duty to unconditionally tender some portion of Ramos's damages even while other costs remained uncertain. *See McDill v. Utica Mut. Ins. Co.*, 475 So. 2d 1085, 1091–92 (La. 1985)). Such a "*McDill* tender" is made "not in settlement of the case, but to show [the insurer's] good faith in the matter and to comply with the duties imposed on them under their contract of insurance with the insured." *Id*. To perhaps oversimplify: Hartford denies it had any duty to pay Ramos until Ramos presented itemized damages in a life-care plan and Hartford had time to evaluate them. Ramos says he was due some amount greater than zero long before his life-care plan was produced. The disputed expert opinions relate to these issues.

    A.    Crichton

Before serving ten years on the Louisiana Supreme Court, Crichton was a Louisiana trial-court judge for some 13 years, an assistant district attorney before that (in the "1980s"), and a

practicing attorney. Crichton CV [168-2] at 1–2. His CV lists no specific experience in the field of insurance law or claims handling.

Hartford calls Crichton's opinions "a legal treatise on Louisiana law." Defs.' Mem. [169] at 2. His report certainly reads that way. Hartford also wants Crichton's opinions excluded because he's not experienced "in the insurance industry or in insurance claims handling." *Id*. at 4. And it says any admissible opinions from Crichton would be cumulative, given that Ramos designated an insurance professional, Louis Fey, to "testify regarding the handling of Mr. Ramos's UM claim by the Defendants and their employees/agents as compared to accepted insurance industry standards that apply to such claims." *Id*. at 5 (quoting Pl.'s Supp. Designation [168-1] at 3). Hartford hasn't moved to exclude Fey or any of his opinions.

The legal nature of Crichton's opinions is evident from his declaration. There, he describes the task Ramos asked him to perform and the questions he was to answer based on the depositions he reviewed:

> 1. Is a plaintiff or his attorney required to agree to the amount of a tender before the insurer is obligated to make an unconditional payment under *McDill*?
>
> 2. When a plaintiff sends a settlement demand to his UM insurer, is he required to use the word "tender" or make a separate demand for a tender before the insurer is obligated to make an unconditional payment under *McDill*?
>
> 3. Do the obligations imposed upon an insurer under *McDill* require the insurer to make an unconditional payment of general damages, and if so, is the insurer entitled to withhold the tender until the full extent of general damages is proved?
>
> 4. Is a plaintiff or his attorney required to prove the Plaintiff's future damages or provide an expert calculation before the insurer is obligated to make an unconditional payment under *McDill*?

Pl.'s Mem. [206] at 20–30 (citing Crichton Dec. [205-1] at 9–15).

Based on those questions, Crichton opines that Hartford's employees "demonstrate[d] a fundamental misunderstanding of the concept of a *McDill* tender," a concept he then explains. Crichton Report [168-3] at 15. For instance, he cites Brett Bielinski's testimony that no *McDill* tender is needed if the claimant doesn't specifically request one. Crichton says there is no such requirement under *McDill* "or any other Louisiana law or jurisprudence of which I am aware," at least so long as the insured has demanded his claim be paid. *Id*. at 16. He concludes that the point behind *McDill* "is to preclude insurance companies from withholding payments to their own insureds in the manner that Hartford did to Mr. Ramos in this case." *Id*. at 17. These opinions and others may be legally correct. But they are straight up "conclusions of law" and "provide opinions on legal issues." *Renfroe*, 974 F.3d at 598.

Ramos disagrees, saying that an attorney may explain the law when the standard of care is defined by law. Pl.'s Mem. [206] at 2. He relies heavily on *Waco International, Inc. v. KHK Scaffolding Houston Inc.*, 278 F.3d 523, 533 (5th Cir. 2002). There, the witness "testified as to legal matters insofar as they related to questions of fact, *e.g.*, issues an attorney typically investigates in determining whether to pursue an ex parte seizure order." *Id*. The "testimony as to legal issues was allowed because th[e] standard necessarily involve[d] what a reasonable lawyer needs to investigate and determine before seeking such an order." *Id*. Crichton goes way past this. He isn't describing a legal backdrop that is relevant to a factual dispute. He instead hopes to interpret Louisiana law and tell the jury Hartford's construction was wrong.

This distinction applies to another case Ramos cites, *Cazorla v. Koch Foods of Mississippi, LLC*, No. 3:10-CV-135-DPJ-FKB, 2014 WL 11456088, at *4 (S.D. Miss. Sept. 22, 2014). There, the defendant was accused of discrimination under Title VII and 42 U.S.C. § 1981. To prove that it did not discriminate, the defendant tendered experts on immigration

6

laws to explain why the defendant acted as it did. *Id.* The experts did not testify about what Title VII or § 1981 require. In other words, the defendant did not offer opinions construing the very statutes at issue in the case. Crichton does exactly that, which is more like *Smith as Tr. for Sanders v. Koch Foods, Inc.*, No. 3:19-CV-721-DPJ-FKB, 2022 WL 1817333, at *2 (S.D. Miss. June 2, 2022) (excluding expert testimony from attorney in § 1981 case explaining § 1981 to the jury).

One reason for this distinction becomes apparent from Ramos's argument. As he correctly notes, Hartford has likewise tendered experts to offer legal opinions; opinions that Crichton rejects. Ramos says, "The difference between Mr. Crichton's opinions and those of Defendants' experts is that Mr. Crichton's opinions are supported and he is qualified to make them." Pl.'s Mem. [206] at 25. In other words, Crichton's legal opinions are right, Hartford's experts are wrong. This highlights the problem. "There being only one applicable legal rule for each dispute or issue, it requires only one spokesman of the law, who of course is the judge." *Askanase*, 130 F.3d at 673 (quoting *Specht v. Jensen*, 853 F.2d 805, 807 (10th Cir. 1998)). Otherwise, "the jury would be very susceptible to adopting the expert's conclusion," and "each party would find an expert who would state the law in the light most favorable to its position." *Id.*

Another well-recognized problem exists. "There is a certain mystique about the word 'expert' and once the jury hears of the attorney's experience and expertise, it might think the witness even more reliable than the judge." *Id.* That potential prejudice is heightened in this instance because Crichton is a former justice on the Louisiana Supreme Court. The Court will not permit the parties to offer competing versions of the law and then ask the jury to decide

7

which expert correctly construed it.  The Court will instruct the jury on the law, and the parties may then argue whether witnesses correctly understood and applied it.

Essentially all of Crichton's opinions offer opinions about Louisiana law.  To the extent a few might not completely do so, they overlap opinions that Fey intends to offer on Ramos's behalf regarding standard adjusting practices in Louisiana.  Courts may "exclude testimony that is repetitious and cumulative of testimony already before the court." *Leefe v. Air Logistics, Inc.*, 876 F.2d 409, 410 (5th Cir. 1989) (affirming exclusion of expert).  The Court grants the motion to strike Crichton as an expert witness.

B.      Heinze

Ramos in turn seeks to exclude opinions from Heinze, a Pennsylvania attorney.  Pl.'s Mot. [172].  Ramos says Heinze isn't qualified to offer opinions on Louisiana insurance standards and his opinions are irrelevant or unreliable because they contradict Louisiana law.

1.      Qualifications

Heinze is an attorney but not licensed in Louisiana.  Heinze Report/CV [172-2] at 28.  He practiced law at two firms from 1983 to 1997, then did a stint of three years as chief litigation counsel for a Philadelphia insurance company.  *Id*. at 26–27.  From 2000 to present, he has operated a business that consults with insurance companies and provides expert testimony.  *Id*. at 26.  His work includes serving as an expert witness on claims-handling procedures.  *Id*. at 7.

Ramos challenges Heinze's qualifications based on his lack of Louisiana-specific claims handling.  Pl.'s Reply [216] at 3.  While Heinze doesn't point to any specific experience handling claims under Louisiana law, the Court finds his extensive experience in the insurance field is sufficient under a preponderance standard.  *See* Fed. R. Evid. 702, Advisory Committee Notes; 2023 Amendments; *see also Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) (noting

that expert need not "be highly qualified" for opinions to be admissible). The Fifth Circuit has "repeatedly found error in district court rulings that exclude experts on the basis of lack of specialization." *United States v. Arthur*, 51 F.4th 560, 572 (5th Cir. 2022).

        2.        Heinze's Opinions

Heinze's report includes opinions addressing the way Hartford handled Ramos's claim. Those opinions counter ones from Ramos's expert Fey. And, as to those witnesses, the parties acknowledge that they may necessarily have to address legal standards because they dictate the industry standards in Louisiana.

But Ramos argues that if the Court allows Heinze to testify as an expert, it should strike eight of his opinions because they conflict with Louisiana law:

> 1. that a *McDill* tender is only required when the entire "amount of damages is not reasonably in dispute" or when "the insurer can determine a specific undisputed amount";
>
> 2. that "legitimate questions as to the extent" of damages excuse an insurer from its obligation to make a *McDill* tender;
>
> 3. that Plaintiff had a duty under Louisiana law to make a "specific monetary demand" before a *McDill* tender was owed;
>
> 4. that Plaintiff had a duty under Louisiana law to demand or prove a "sum certain" or "amount certain";
>
> 5. that there could be no "undisputed amount in order to make a tender under the Policy, until such time as the life care plan was submitted";
>
> 6. that Hartford satisfied its duty by "[a]waiting additional specific information from Mr. Ramos and his counsel" contradicts Louisiana law;
>
> 7. that the "the cost of providing insurance would increase and, thereby, lead to inflated prices for all policyholders"; and
>
> 8. testimony regarding Plaintiff's submission of treatment to workers' compensation for payment or whether Plaintiff appealed the denial of workers' compensation benefits.

9

Pl.'s Mot. [172] at 2.

Hartford generally responds by saying that Heinze's testimony would be helpful because he discusses how the relevant law impacts the way the industry addresses claims like these. Defs.' Mem. [208] at 7. It then gives examples of helpful testimony without tackling Ramos's list. *Id.* at 10.

***Disputed opinions on legal issues:*** Ramos's first six objections mostly address whether Heinze may render opinions suggesting that satisfactory proof of loss requires an insured to demonstrate an exact amount or that the insurer may await final proof. *See* Pl.'s Mot. [172] at 2. Not everything Heinze says in his report about *McDill* would fit those descriptions, but the way Ramos words the opinions he wants excluded would. The Court therefore limits this analysis to the six opinions Ramos cited.

The court in *Lamar Advertising Co. v. Zurich American Insurance Co.,* was asked to strike similar opinions. 533 F. Supp. 3d 332, 336 (M.D. La. 2021). Like Hartford, the insurer retained an expert (Segalla) to address whether the carrier violated sections 22:1973 and 22:1892. *Id.* But the scope of his testimony was unclear. While the expert said there was no duty to make a *McDill* tender because there was no "satisfactory proof of loss," he also suggested that "unless the total amount was undisputed," the insurer had no duty to pay within 30 days. *Id.* at 346. The court explained why the former was admissible, but the latter was not:

> If Segalla's opinion is that *Louisiana Bag* and *McDill* are inapplicable to this case because, factually, there was never a failure to pay within 30 days of satisfactory proof of loss of at least a portion of the claim, then this is a question of the factual soundness of his assumptions and is not a ground to strike his testimony. *Imperial Trading Co.* [*v. Travelers Prop. Cas. Co. of Am.*, 654 F. Supp. 2d 518, 522 (E.D. La. 2009)]. If his opinion, on the other hand, is that unless the total amount is undisputed, the insurer has no obligation to pay within 30 days, even if some smaller amount is not in dispute, then this would represent a fundamental misunderstanding of Louisiana law on a critical part of the case and he would not be allowed to so testify.

10

*Id.* The court concluded that Segalla intended to testify that no tender is required for undisputed amounts if the full claim remained disputed. *Id.* at 347. And because that opinion conflicted with *McDill* and *Louisiana Bag*, the court struck the opinions and "any subsidiary opinion which is based solely on this incorrect statement of the law." *Id.* at 347–48.

So too here. To the extent that Heinze would suggest to the jury that no tender is required until the exact amount or full extent of all damages are known, the testimony conflicts with Louisiana law and the Court's summary-judgment rulings. As worded, opinions one through five above would conflict with Louisiana law.

Item six, however, might not. Ramos describes that opinion as being that "Hartford satisfied its duty by '[a]waiting additional specific information from Mr. Ramos and his counsel.'" Pl.'s Mot. [172] at 2 (quoting Heinze Report/CV [172-2] at 22). This seems more factual and does not describe the duty Hartford supposedly satisfied. Provided the duty is consistent with *McDill*, the opinion might be acceptable. This part of the motion is denied.

Also, there are other opinions in Heinze's report that sound similar to those on Ramos's list but more closely follow Louisiana law. Those have not been specifically challenged and will not be addressed. In short, the Court draws the same line as the court in *Lamar Advertising* and grants the motion as to items one through five but not six.

**The other two:** Ramos mentions two other opinions that should be stricken (1) an opinion about inflating prices for policyholders and (2) testimony about injuries Ramos failed to submit to workers' compensation or failed to appeal after workers' compensation denied the claims. Hartford does not address these in response, and they have otherwise been addressed in the Court's order granting Ramos's motions in limine. These opinions are stricken.

### C. Heidelberg

Hartford designated a Mississippi attorney, Heidelberg, to challenge Ramos's medical experts, life-care planner, legal expert, and others. *See* Heidelberg Report [174-2]. Ramos says being an attorney doesn't qualify Heidelberg to render the opinions he holds. He therefore moves to strike Heidelberg as an expert or, alternatively, to exclude thirteen specific opinions. Pl.'s Mot. [174] at 1–2.

Heidelberg's initial report seems to offer opinions on medical conditions, vocation, life-care planning, insurance claim handling, and Louisiana law. For example, he states that based on his experience as an attorney, "[j]ust because someone suffers a 'brain bleed' does not mean the condition is permanent or that it will not improve over time." Heidelberg Report [174-2] at 28. That's a medical opinion. He says "Mr. Brawner's opinions that Mr. Ramos needs assisted living facility care for life are wholly inconsistent with Mr. Ramos's post-accident history." *Id.* at 24. That opinion touches life-care planning and medical issues. He also concludes that Brawner's life-care report is unreliable and should be struck under Rule 702. *Id.* at 23. That's a legal opinion as are his opinions on the legal duties under Louisiana law. *See* Heidelberg Rebuttal Report [174-3] at 2–3.

Though Heidelberg seems to offer medical, vocational, life-care, and Louisiana bad-faith opinions, Hartford says he is not qualified to render such opinions and hasn't. Defs.' Mem. [210] at 7, 12. It says instead that Heidelberg provides qualified expert opinions on the value of Ramos's personal-injury claim in Mississippi. *Id.* at 4. But Hartford's argument shows how fine that line is.

According to Hartford, it will offer Heidelberg to "address[] some of Plaintiff's various medical and social issues which Plaintiff claims resulted from the subject accident." *Id.* at 6.

12

This will relate to "what weight (if any) Hartford should have given to those issues when evaluating Plaintiff's claim" as well as "detailing what he—as a Mississippi attorney . . . [practicing] in cases such as this (i.e., an expert on evaluating Mississippi personal injury clams)—would have considered in evaluating Plaintiff's Mississippi personal injury claim." *Id*. at 6.  And because it says Heidelberg's opinions are relevant to valuing the "car[-]wreck case" that will be decided by a Mississippi jury, his lack of expertise in Louisiana bad-faith law is "moot." *Id*. at 12.

First, the car-wreck case is no longer before this jury.  Second, Heidelberg never gives the ultimate value of the car-wreck case, which shows his opinions aren't about that.  Third, his core opinions all relate to Louisiana insurance law.  For instance, Heidelberg describes the scope of his work as "evaluat[ing] the reasonable value of the personal injury claim of Mr. Ramos at certain points in time, and particular upon receipt of the life[-]care plan of Bruce Brawner." Heidelberg Report [174-2] at 2.  That seems to have little to do with what a Mississippi jury might ultimately award for the car-wreck—something Heidelberg never addresses.  It is instead a direct response to Plaintiff's *McDill* claim.

The point becomes even clearer later in this same paragraph.  After discussing Louisiana bad-faith cases, Heidelberg states:  "In my opinion, there was not an 'undisputed portion' of this claim, and payment of the policy limits does not suggest otherwise." *Id.*  The "undisputed portion" has nothing to do with the value of the car wreck and is instead a quote from *McDill*. Thus, his core opinions relate to insurance duties under Louisiana law, something Hartford says he is not qualified to address.  Even if qualified, the opinions would constitute impermissible legal conclusions as with Crichton and Heinze.  *See Owens*, 698 F.2d at 240; *see also* Fed. R. Evid. 704, Advisory Committee Notes, 1972.

And there's another concern. "The statements of counsel are not evidence." Fifth Cir. Pattern Instruction (Civ.) 3.1. Yet Hartford is attempting to transform a retained attorney's arguments into evidence by designating him as an expert. Heidelberg's report reads like a skilled cross-examination or closing argument. But Hartford is represented by counsel equally capable of raising the same issues Heidelberg highlights in his report. Dressing up an attorney's arguments as expert opinions is unhelpful and unfairly prejudicial. *See Peters v. Five Star Marine Serv.*, 898 F.2d 448, 449 (5th Cir. 1990) ("[W]hether the situation is a proper one for the use of expert testimony is to be determined on the basis of assisting the trier.") (quoting Fed. R. Evid. 702 Advisory Committee Notes)).

It's also unhelpful to call a witness to challenge the believability of other witnesses. Heidelberg claims that opinions from Drs. Katz and Webb are questionable because they were not treating physicians, and he suggests a litigation motive for each witness he addresses in his reports. Again, Hartford would say this is just part of valuing the car-wreck claim, but "peeled of its thin veneer of jargon, it amounts to no more than an inquiry whether the witness is to be believed by the jury or not." *United States v. Wertis*, 505 F.2d 683, 685 (5th Cir. 1974) (affirming exclusion of testimony by psychiatrist on whether a witness could distinguish truth from fiction).[1]

The Court finally notes that other disputed portions of his reports suffer these same deficiencies and then some. For example, the Court excluded evidence regarding the failure to

---

[1] As noted, Hartford doesn't claim that Heidelberg is an expert on Louisiana insurance law, which would encompass claim handling. So, he should not be heard to state how a Louisiana claims handler would consider the record. To the extent his opinions explore those issues, they are also cumulative of those from Heinze. *See Leefe*, 876 F.2d at 411 ("We do want to discourage attorneys from parading additional experts before the court in the hope that the added testimony will improve on some element of the testimony by the principal expert.").

submit certain expenses to workers' compensation or appeal a workers'-compensation denial. *See* Order [276] at 11–12. So too, the rulings regarding Crichton's legal opinions negate the rebuttal legal opinions in Heidelberg's rebuttal report. And his opinions in that report about who holds the duty to establish the amount of the claim—for which no legal authority is cited—are legal opinions that will be excluded for the same reason the Court struck Crichton.

The Court therefore grants Ramos's motion in its entirety and strikes Heidelberg as an expert witness.

D.   Henley

Fourth and last comes Hartford's expert Henley. Pl.'s Mot. [170]. Henley became a CPA in 1985 and worked in accounting and related fields. Henley Report [170-2] at 7–8. Then in 1994, he became an attorney as well, focusing on bankruptcy practice. *Id*. Ramos concedes that Henley may testify about how to calculate damages, even though Ramos disagrees with his opinions. Pl.'s Mem. [171] at 1–2. But Ramos asks to exclude Henley's opinions that exceed these qualifications.

***Timely deposit of Hartford's payment.*** Henley thinks Ramos lost potential interest income by failing to immediately deposit Hartford's $6 million tender. Henley Report [170-2] at 4. The Court granted Ramos's motion in limine to exclude evidence of the delayed deposit if used to suggest that Ramos didn't need the money or to show the difficulty in assessing his losses. Order [274] at 8. But Hartford made another argument—that the delay demonstrates a failure to mitigate. Because that argument was underdeveloped in Hartford's response to the motion in limine, the Court deferred final ruling until trial. *Id.* at 9.

Henley addresses this point more specifically, calculating Ramos's economic losses from the delayed deposits. Henley is qualified to give that opinion, and Ramos's critique of his work

15

goes to weight.  *Neely v. Great Escapes Pelahatchie, LP*, No. 3:21-CV-786-DPJ-ASH, 2024 WL 5125140, at *5 n.2 (S.D. Miss. Dec. 16, 2024) (explaining 2023 amendments to Rule 702).  So, if the evidence is deemed admissible, Henley will be allowed to give his calculations, though he can't testify whether the delay was unreasonable.  That question is for the jury to decide.  *See* Fed. R. Evid. 704.

*Medical necessity of Ramos's treatment.*  Ramos objects to Henley's comments about Ramos's medical needs, but Hartford says he offers no medical opinions.  Defs.' Mem. [204] at 5.  According to Hartford, Henley was merely discussing "why there was never an amount owed to Plaintiff over which reasonable minds could not differ by explaining" the workers'-compensation denial for inpatient treatment.  *Id.*  Henley is well qualified in many areas, but Hartford fails to demonstrate any knowledge or experience with claims handling under Louisiana law.  Even if he had that expertise, his opinions are not based on reliable methodology.  "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert."  *Gen. Elec. Co.*, 522 U.S. at 146.  So they would have the same deficiencies as Heidelberg's opinions.  This part of the motion is granted.

*Criticism of Dr. Katz:*  On a related issue, Ramos believes Henley has offered opinions on whether Dr. Katz is a reliable witness and the soundness of his decisions.  Hartford says no such opinions were offered and Henley was instead stating facts.  Defs.' Mem. [204] at 6.  Whether those statements are fact is for the jury to decide, but they do sound like opinions, and Henley is not qualified to offer them.  Nor has he supported those opinions with reliable analysis.  And, as noted with Heidelberg, the opinions would be improper anyway.  *Wertis*, 505 F.2d at 685.  This part of the motion is also granted.

***Workers'-compensation claim.*** Henley addresses Ramos's workers'-compensation claim and concludes that his lawyers acted negligently by failing to submit the correct forms for inpatient treatment at TASS and then failing to appeal when that claim was denied. He concludes that had Ramos appealed, then the treatment would have either been provided or, if the appeal was denied, then the care wasn't medically necessary anyway. Henley Report [242-8] at 3. There are a lot of assumptions there with no analysis, but Hartford again says Henley offered no expert opinions on these issues. Defs.' Mem. [204] at 7, 8. It then says, however, that if those are opinions, then they would be within Henley's expertise. *Id.*

To begin, Henley is highly respected within the field of forensic accounting, bankruptcy, and other related areas. But nothing in his CV or Hartford's response suggests experience with Louisiana workers'-compensation claims or legal malpractice under Louisiana law. In short, the opinions are unhelpful to the jury. In any event, the Court granted Ramos's motion in limine dealing with these workers'-compensation issues. Order [276] at 10–12. As stated then, the Court has not excluded all references to the workers'-compensation claim, but it has excluded the issues Henley addresses in his report.

***Whether any part of Ramos's claims was undisputed.*** Henley recaps the two Louisiana bad-faith statutes Ramos bases his case on, section 22:1973 and 22:1892. Henley Report [242-8] at 4. He then notes that under those statutes, the insurer has no duty to pay until it has "satisfactory proof of loss." *Id.* Henley concludes that before the life-care plan, "there was no basis upon which to pay any undisputed amount." *Id.* Like Heidelberg, these opinions necessarily address Louisiana law and claims-handling practices, two subjects for which Henley has no demonstrated expertise. For that and the other reasons stated throughout this Order, the Court also grants this part of Ramos's motion.

IV.   Conclusion

The Court has considered all arguments; those not addressed would not have changed the conclusion. For the reasons explained, Defendants' motion to exclude [168] Crichton is granted; Plaintiff's motion to exclude [174] Heidelberg is granted; Plaintiff's motion to exclude [170] Henley is granted in part and denied in part; and Plaintiff's motion to exclude [172] Heinze is granted in part and denied in part.

**SO ORDERED AND ADJUDGED** this the 8th day of July, 2025.

>                              s/ *Daniel P. Jordan III*
>                              CHIEF UNITED STATES DISTRICT JUDGE